19567

AETNA CASUALTY & SURETY COMPANY, Respondent, v.
John SESSIONS et al., Appellants

(194 S. E. (2d) 877)

*Messrs. Connor & Connor,* of Kingstree, *for Appellant,*

*Leonard B. Burgess, Esq.,* of Kingstree, *for Respondent,*

*Messrs. Moore, Flowers & Doar,* of Georgetown, *for Respondent, Aetna Casualty & Surety Co.*

February 9, 1973.

Moss, Chief Justice:

This action is one under the "Uniform Declaratory Judgments Act," Section 10-2001 *et. Seq.,* 1962 Code of Laws. Aetna Casualty & Surety Company, the respondent herein, brought this action to determine the extent of its liability, if any, under an automobile liability insurance policy issued to Sam Seward. The policy was in force on December 10, 1969, when a Chevrolet pickup truck of the policyholder, being operated by Arthur Anderson, Jr., was driven from

the highway resulting in the deaths of the said Arthur Anderson, Jr., and Eugene Miller and injury to John Sessions, all employees of Sam Seward. There was joined as a party to this action John Sessions, who had commenced an action against Sam Seward and Geneva L. Anderson, administratrix of the estate of Arthur Anderson, Jr., seeking damages for his injury; and Lula Mae Miller, administratrix of the estate of Eugene Miller who had commenced an action against Sam Seward and Geneva L. Anderson, administratrix of the estate of Arthur Anderson, Jr., seeking damages for the alleged wrongful death of Eugene Miller. Nationwide Mutual Insurance Company was also joined as a party to the action because it had in force a liability insurance policy covering the personal automobile of Arthur Anderson, Jr., which provided coverage to him while driving a non-owned automobile with the consent of the owner thereof.

It is admitted that Sam Seward was engaged in the pulpwood business and that Arthur Anderson, Jr., Eugene Millier, and John Sessions were his employee's, and that the insured pickup truck belonging to Sam Seward was driven each day by the said Arthur Anderson, Jr., the regular driver, and was used solely in the pulpwood business to transport these three employees back and forth to work. It further appears that these employees were paid on a weekly basis and as a part of their employment Seward furnished them transportation to and from their work. At the time of the injury to Sessions and the deaths of Anderson and Miller, they were returning from the woods where they had been working, to their homes.

Aetna, under the terms of its policy, agreed to pay on behalf of the insured all sums which he should become legally obligated to pay as damages because of bodily injury or death caused by accident and arising out of the ownership, maintenance or use of the insured vehicle. Under the "exclusions" it is provided that:

"This policy does not apply . . .

"(e) to bodily injury to any employee of the insured arising out of and in the course of . . .

"(2) other employment of the insured."

Aetna denied liability and asserted that since John Sessions and Eugene Miller were employees of Sam Seward the injury to Sessions and death of Miller arose out of their employment and coverage was expressly excluded under its policy provision (e) (2) thereof.

The liability policy of Nationwide covering the personal automobile of Arthur Anderson, Jr. provided coverage to him while driving a nonowned automobile with the consent of the owner thereof. This policy provided:

"(d) This insuring agreement does not apply:

"(1) to any automobile owned by or furnished for regular use to . . . the Named Insured . . .

"(3) under Coverages E, F of division 1 of Coverage G, to any automobile while used in a business or occupation . . . of such Name Insured . . . except a private passenger automobile operated or occupied by such Named Insured, . . . "

It is the position of Nationwide that its policy provided coverage for Arthur Anderson, Jr. while driving another vehicle with the owner's permission, except that said coverage does not apply to any automobile owned by or furnished for the regular use of the said Anderson, its named insured. Nationwide further contends that the pickup truck owned by Sam Seward was furnished for the regular use of the said Arthur Anderson, Jr. and therefore its policy afforded no insurance coverage to its insured. Nationwide further contends that its contract of insurance with Arthur Anderson, Jr. provided that it would not apply to any automobile while used in the business or occupation of Anderson, except a private passenger automobile operated or occupied by him and that the pickup truck operated by the said Anderson was used in his business or occupation and hence no coverage could be afforded under its policy.

This case was, by consent, referred to a Special Referee for trial. Thereafter, he filed his report in which he found that Anderson, Sessions and Miller were employees of Sam Seward and they were furnished transportation by him to and from work and the injury to Sessions and the death of Miller arose out of and in the course of their employment. He further found that since Sessions and Miller were employees of Seward they were excluded from coverage under the policy of Aetna and it had no liability to either Sessions or Miller.

As to Nationwide, he found that although Arthur Anderson, Jr. was the regular driver of the pickup truck owned by Seward, such was not furnished for his regular use and was not under his control except during the time that he was actually driving it. He further held that the evidence does not show any use of the pickup truck other than the transportation of workers to and from work and that it was being used at the time of the injury to Sessions and the death of Miller as a private passenger automobile as defined in the policy of Nationwide and, because thereof, the exclusion in Nationwide's policy was not applicable.

Only Nationwide excepted to the report of the Special Referee. Thereafter, the appeal was heard by the Honorable John Grimball, Presiding Judge, who issued his Order overruling the exceptions and affirming the report of the Special Referee. This appeal by Nationwide followed.

Nationwide excepted to the holding of the trial judge that the Chevrolet pickup truck owned by Seward was not furnished for the regular use of Arthur Anderson, Jr. This poses the question of whether the Seward truck was "furnished for the regular use" of Anderson If it was, the insurer is not liable. The obvious purpose of the exclusionary clause in Nationwide's policy was to limit coverage to casual or infrequent use of an automobile other than the one defined in the policy. *In Grantham v. United States Fidelity & Guaranty Co.,* 245 S. C. 144, 139 S. E.

(2d) 744, we stated the purpose of the exclusion clause "furnished for the regular use" is :

" . . . to afford coverage for the infrequent and casual use of vehicles other than the one described in the policy, but not to cover the insured with respect to his use of another vehicle which he frequently uses or has the opportunity to use. The intent is clear to, protect the insurer from a situation whereby an insured could purchase a policy covering one automobile and be covered without qualification as to all automobiles available for his use."

"Regular use", as used in automobile liability policy provisions setting out the exclusion from the "drive other cars" of the policy suggests a principal use as distinguished from a casual or incidental use. *State Farm Mut. Auto Ins. Co. v. Bates,* 107 Ga. App. 449, 130 S. E. (2d) 514. Under a liability policy excluding coverage where an automobile involved in an accident was "furnished for regular use" to the insured, the term may be used in the sense of time, steady as opposed to, occasional; or in the sense of type of use, usual as against unusual. *Hartford Acc. & Indem Co. v. Hiland,* 7 Cir., 349 F. (2d) 376.

The case of *Seaboard Fire & Marine Co. v. Gibbes,* 4 Cir., 392 F. (2d) 793, was one for a declaratory judgment action in which the insurer brought an action for declaration that no coverage was provided by its policy which insured Gibbes when he was using a nonowned automobile within the scope and permission granted by its owners. The policy defined a nonowned automobile as one not furnished or available for the regular use of the named insured. Gibbes operated his employer's truck to transport co-employees to and from work. The truck was sometimes left with Gibbes overnight so that he could conveniently pick up and transport his fellow employees to, and from work. While so operating the truck he injured one Brisbane. It was held that at the time of the accident, Gibbes was performing the duty which was normally required of him and the truck was furnished for his regular use in performing this duty, there being evidence

in the record that he used the truck almost daily over a number of years. The court concluded that the truck was furnished for the regular use of Gibbes and Coverage under Seaboard's policy issued to Gibbes was excluded.

There are numerous cases dealing with the construction and effect of a provision excluding coverage of a "nonowned automobile" furnished for the regular use of a named insured. Many of the cases are collected in 173 A.L.R. 901, 86 A. L. R. (2d) 931, and 36A Words and Phrases, "Regulas Use" 301.

It is conclusive from the record that the pickup truck belonging to Sam Seward was used solely in his pulpwood business each day by Anderson, the regular driver thereof, who was the only employee of Seward who had a driver's license. Unquestionably the pickup truck was furnished Anderson for his regular use and such use was not casual or infrequent, but a steady and daily use of the vehicle.

We conclude that Seward's pickup truck was furnished to Anderson for his regular use; it did not meet the definition of a nonowned automobile contained in Nationwide's policy and, consequently, it did not afford Anderson coverage for the accident in question. It follows that the trial judge was in error in not absolving Nationwide from any liability in this case.

In view of the conclusion that we have heretofore reached, we find it unnecessary to pass upon the other questions raised by the exceptions of Nationwide.

The judgment of the lower court is reversed and this case remanded thereto for entry of judgment in favor of Nationwide, the appellant.

Reversed.

LEWIS, BUSSEY, BRAILSFORD and LITTLEJOHN, JJ., concur.