842 F.2d 1289
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
CONTINENTAL INSURANCE COMPANY, a Massachusetts corporation,
Plaintiff-Appellee,
v.
John PASCHAL, Jr., Kimberly Paschal, Defendants-Appellants,
and
Clarence Campbell, Defendant.
CONTINENTAL INSURANCE COMPANY, a Massachusetts corporation,
Plaintiff-Appellee,
v.
Clarence CAMPBELL, Defendant-Appellant,
and
John Paschal, Jr., Kimberly Paschal,
 Nos. 87-3023, 87-3024.
 United States Court of Appeals, Fourth Circuit.
 Argued Nov. 3, 1987.
Decided March 15, 1988.
 
 Harold A. Boney, Jr. (Howell, Gibson & Boney on brief); James B. Richardson, Jr. (Richardson & Smith, on brief), for appellants.
 Bruce Edward Miller (Robert A. Patterson, Barnwell, Whaley, Patterson & Helms, on brief), for appellee.
 Before DONALD RUSSELL, WIDENER and WILKINS, Circuit Judges.
 WIDENER, Circuit Judge:
 
 
 1
 This is an appeal from a grant of judgment notwithstanding the verdict. In this case involving a policy of automobile insurance, the jury found that the automobile involved was not furnished for the regular use of Kimberly Paschal. The district court disagreed and entered judgment for Continental. We reverse.
 
 
 2
 Continental Insurance Company sought a declaration that an insurance policy it had issued to John and Yvonne Paschal provided no coverage to John or his daughter, Kimberly, in connection with a judgment entered against them as a result of an automobile accident involving Kimberly's operation of a car owned by her brother, Mark. Continental asserts that it has no liability because of the terms of a policy exclusion which excludes "non-owned" automobiles used "under an arrangement by which the named insured is regularly furnished a vehicle."
 
 
 3
 In this diversity case, the substantive law of South Carolina governs. In Grantham v. United States Fidelity and Guaranty Co., 245 S.C. 144, 139 S.E.2d 744 (1964), the South Carolina Supreme Court considered whether a policy issued to Mrs. Grantham provided coverage for medical payments for injuries sustained by her, as well as funeral expenses incurred on her behalf, when she was killed as a passenger in a county-owned vehicle provided to her husband for use in accordance with his duties as a deputy sheriff. The court decided that the purpose of "furnished for regular use" policy exclusions is to afford coverage for the "infrequent and casual use of vehicles other than the one described in the policy, but not to cover the insured with respect to his use of another vehicle which he frequently uses or has the opportunity to use." It sustained a trial court determination that the vehicle had been used, consistent with the terms of the arrangement between the sheriff and the county, for personal and business use over an extended period of time and that the only limitation upon the use of the vehicle for personal purposes was that it could not be used outside of the county without special permission. Grantham, 139 S.E.2d at 746. The court stated that the undisputed facts established both the terms of the arrangement as well as the actual use, and that these facts showed that use for such purposes was not casual, occasional or infrequent, therefor the policy exclusion applied. Id. at 746-47. That court again considered the problem in Aetna Casualty & SuretyCo. v. Sessions, 260 S.C. 150, 194 S.E.2d 877 (1973). It held that a pickup truck owned by an employer but used solely by an employee on a daily basis to transport himself and other employees to and from work, was furnished for the driver's regular use under a policy issued to the driver for his personal automobile. The Sessions court stated that the "regular use" policy provisions suggest exclusion for "principal use as distinguished from a casual or incidental use." Sessions, 194 S.E.2d at 879. The court elaborated:
 
 
 4
 Under a liability policy excluding coverage where an automobile involved in an accident was "furnished for regular use" to the insured, the term may be used in the sense of time, steady as opposed to occasional; or in the sense of type of use, usual as against unusual. (Citations omitted)
 
 
 5
 Sessions at 879. The "steady and daily" use of the truck by the driver persuaded the court that the use was not "casual or infrequent," and was a regular use of the vehicle. 194 S.E.2d at 880.
 
 
 6
 We think the Grantham and Sessions cases construe regular use to be usual, steady, principal or frequent, as distinguished from occasional, unusual, incidental or casual use. We emphasize that in our opinion South Carolina has determined that use per se does not lead to exclusion of coverage. "While the meaning of the policy provision is unambiguous, its application depends upon the facts of the particular case." Grantham, 139 S.E.2d at p. 746. (Italics added)
 
 
 7
 In 1981, Mark Paschal, John's son, was in the United States Navy and scheduled for deployment to the Persian Gulf. Mark left the car at home with his father, in anticipation of serving overseas, and arranged for his father to start and operate his (Mark's) car from time to time in order to avoid its deterioration due to neglect. Whether or not this arrangement amounted to Mark's furnishing the car for the regular use of his father is the gist of the controversy.
 
 
 8
 The Paschals denied that the vehicle was furnished for regular use, and introduced evidence which tended to show that Mark sought to minimize the deleterious effect that extended immobility would have on his car, and that he otherwise restricted its availability.[1] Several witnesses testified in support of this contention.[2] Continental established that the car was driven over one thousand miles during the month in which the accident occurred,[3] adduced testimony to the effect that Kimberly had used the vehicle on more than one occasion and that the terms of the arrangement between Mark and his father were not very specific. The record reflects that the Paschals obtained Mark's specific permission for the particular occasion to use the car for an August 1981 trip to Atlanta, a trip which accounted for approximately 800 of the 1,073 miles driven that month.
 
 
 9
 Kimberly had driven the car only three times in the six-month period the car was at their home, once to school, once to the store, and the trip to church at which time the accident involved in this case occurred. These three trips of Kimberly were during the week just before the accident. She had not had an unrestricted driver's license prior to that time. During the same one-week period, John remembered using the automobile to go to the store and to work a time or two. Yvonne only used the car three times during the six-month period it was at their home, once to get it inspected, which would have been on August 5, 1981, once to the grocery store, and another time which she did not remember the occasion for. The latter two dates do not appear in the record.
 
 
 10
 In any event, there was testimony and evidence offered by both sides in their efforts to establish the nature of the arrangement and the level of use of the vehicle, and the district court instructed the jury in part as follows:
 
 
 11
 "Regular use, as used in an automobile liability policy such as this, suggests a principal use as distinguished from a casual or incidental use. The term may be used in the sense of time, and when it is, it means steady as opposed to occasional, or it may be used in the sense of the type use, and there it would be usual as against unusual.
 
 
 12
 "The purpose of this provision is to provide coverage for the infrequent and casual use of vehicles other than those described in the policy as being insured, but not to cover the insured with respect to his use of another vehicle which he frequently uses or has the opportunity to use."
 
 
 13
 On the instructions to the jury, the essence of which we have just quoted, the verdict was for the Paschals, and we think there was sufficient evidence in the record to have supported its verdict.
 
 
 14
 In granting its judgment n.o.v., the district court, in its analysis of the evidence, relied entirely on the 1,073 miles the vehicle was driven during the month of August, just before the accident. It allowed no more than 800 miles for the Atlanta trip and then averaged the remaining mileage out to 11 miles a day. It concluded that, in view of the average of 11 miles per day during the period leading up to the accident, it was "inconceivable that the jury could "rationally" have found casual, infrequent or incidental use. Also entering into the district court's decision was the case of Campbell v. Paschal, 347 S.E.2d 892 (S.C.App.1986), which had held that since John controlled the use of the car, the South Carolina family purpose doctrine applied. The district court alternately held that, since John controlled the use of the car, the jury should have been precluded from finding that it was not "furnished for the regular use" of John. This part of the district court's decision is simply not sound. The mere fact that John may have had the right to tell Kimberly when she could or could not operate the automobile has little or nothing to do with whether or not Mark furnished the car for the regular use of John. While it might even be an item to be considered in evidence, there is nothing in the record to support the district court's conclusion that it is dispositive. It would be just as logical to give preclusive effect in favor of the Paschals on account of the South Carolina court's fact finding that Kimberly used the car on the occasion in question only because her mother's car was blocked in by another car and she could not drive her father's car because it had a manual transmission, certainly not a regular use.
 
 
 15
 A judgment n.o.v. for the party having the burden of proof is controlled by a standard so stringent as to make its exercise rarely appropriate. To grant such a judgment notwithstanding a contrary jury verdict, the evidence must be so overwhelming as to preclude any other finding. Allen v. Zurich Ins. Co., 667 F.2d 1162 (4th Cir.1982). The court must consider the entire record in the light most favorable to the non-moving party and should not enter judgment n.o.v. if there is any evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment could reasonably return a verdict for the non-moving party. Wyatt v. Interstate & Ocean Transport Co., 623 F.2d 888 (4th Cir.1980).
 
 
 16
 In granting the judgment n.o.v. in favor of Continental, the district court, in its analysis of the evidence, dwelled only on the period shortly before the accident. Rather than taking into account the evidence of Kimberly, John and Yvonne as to the few times they used the car, it construed the evidence with respect to that month most favorably to Continental, which had the burden of proof, instead of most favorably to the Paschals, who did not. For example, it found that the car was driven, "at most, 800 ... miles" on account of the trip to Atlanta, instead of using the approximation of 800 miles of Yvonne, which apparently was the only evidence in the record as to the mileage driven on that trip. The district court then subtracted 800 from 1073 and found it to be a "necessary conclusion" that the car was driven 273 miles in 25 days in the vicinity of the Paschals home in Beauford.
 
 
 17
 There is evidence in the record of three trips by Kimberly during this time, three trips by John, and a one-way trip by Yvonne for the inspection, none of which was for anything more than the most occasional intermittent use; and no inquiry was made by the plaintiff, which had the burden of proof, of any other particular use during this period of time. We think it was error for the district court to set aside the jury's verdict based solely on this evidence, as it did. The jury had before it much evidence to the effect that the use of the car by John, Yvonne, and Kimberly was occasional, as opposed to steady, unusual, as opposed to usual, and casual or incidental, as opposed to principal. While a jury verdict for Continental on all the same facts which appear in this case would almost certainly have to be affirmed, it is just as certain that a jury verdict in favor of the Paschals should also be affirmed.
 
 
 18
 The question presented in this case was essentially a matter of fact, and the jury's verdict should be final. We find nothing in the record to indicate that the inference drawn by the jury was "so tenuous that it rests merely upon speculation and conjecture." Ford Motor Company v. McDavid, 259 F.2d 261-266 (4th Cir.1958).
 
 
 19
 The Paschals, as an alternate ground for reversal, urge the inconsistent positions taken by Continental during the course of this case, alternately admitting coverage and then denying it, and defending the case without reservation of right, and then with it. Because of the disposition we make of the case, we express no opinion on that question.
 
 
 20
 The judgment of the district court is accordingly
 
 
 21
 REVERSED.
 
 
 
 [1]
 Mark testified in deposition that in addition to periodic operation for purposes of maintenance, he authorized his father to use the car to commute to work, but only when his father's car was inoperable. Mark testified further as to the restrictive nature of the arrangement, although he acknowledged not being "super specific" in this regard
 
 
 [2]
 In addition to the testimony of John and Yvonne (Mark's mother), a neighbor (Mrs. Kelley) testified that Mark's car was most often parked in the Paschals' yard, that it was "like part of the furniture. It was always there." Bruce Jackson, with whom John Paschal carpooled to work, testified that Mr. Paschal never used Mark's car to drive to work while Jackson was with him. Kimberly also corroborated the testimony that the car was operated primarily by her father pursuant to the terms of the arrangement
 
 
 [3]
 The accident Occurred on August 30, 1981. Uncontroverted evidence, proffered by Continental which consisted of the testimony of an auto mechanic and insurance appraiser as to their readings of the car's odometer during their respective examinations of the vehicle, established that between August 5th and 30th the vehicle was driven a total of 1,073 miles