367 So.2d 33 (1978)
Alice NEVELS
v.
John T. HENDRIX.
No. 9742.
Court of Appeal of Louisiana, Fourth Circuit.
December 7, 1978.
*34 Marvin C. Grodsky, New Orleans, for plaintiff-appellant.
Robert J. Neal, New Orleans, for defendant-appellee.
*35 Before LEMMON, STOULIG and SCHOTT, JJ.
LEMMON, Judge.
This matter arises from an automobile accident between plaintiff and John Hendrix. The principal issue is whether Hendrix was afforded liability coverage under a family automobile policy issued by Maryland Casualty Company (the sole remaining defendant), when he was driving a car owned by his employer and furnished to him for use only during hours of employment, and when the accident occurred after working hours.
The documentary evidence stipulated by counsel established: Hendrix was employed by the U. S. Department of Housing and Urban Development, which furnished him with the vehicle he was driving at the time of the accident. The Department, by written memorandum, authorized him to use the car for official purposes only, but additionally authorized him to drive the car before and after work between his place of residence and his place of employment, since starting and ending his official travel at his residence was deemed to result in advantage to the Department. Hendrix's regular working hours were 8:00 a. m. to 4:30 p. m., and the accident occurred at 8:00 p. m. Although Hendrix stated in answers to interrogatories that the accident occurred while he was returning home from a work assignment, the employer's records contradicted this, and an investigative report further indicated the falsity of the answer.

I
Under the terms of Hendrix's policy Maryland undertook:
"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages . . . arising out of the ownership, maintenance or use of the owned automobile or any non-owned automobile . . ."
The policy further defined non-owned automobile as follows:
"`non-owned automobile' means an automobile or trailer not owned by or furnished for the regular use of either the named insured or any relative, other than a temporary substitute automobile".
A family automobile liability policy generally covers an insured for liability arising out of the use of any automobile, but some uses are excluded when the nature of the use generates substantial risks not contemplated by this type of policy. The purpose of the insuring agreement in this policy, as to vehicles not owned by the insured, is to provide coverage during the occasional or casual use of such vehicles, but to exclude coverage of the frequent, habitual or principal use of such vehicles which would substantially increase the risks of the insurer beyond those contemplated when the parties entered into the insurance contract.
The "furnished for regular use" exclusion generally comes into play in intrafamily relationships or in employment relationships.[1] The basic reasoning underlying the "furnished for regular use" exclusion in employment situations is that the family automobile policy is not designed to cover an employer's vehicle regularly used by the employee for employment purposes (since the employer should cover these risks) or an employer's vehicle regularly used by the employee for personal purposes (since if the employer does not cover these risks, the employee should do so at an additional premium *36 because of the additional exposure). This type of policy therefore excludes vehicles which fall into these categories.
The vehicle in the present case, however, did not fit into either category, when considered as to its use at the time of the accident which gave rise to Hendrix's liability. At the pertinent time the vehicle was not furnished for Hendrix's use at all, and indeed his use at that time was expressly prohibited. And since (to the extent this record shows) Hendrix had never before used the vehicle after working hours or for personal purposes, such use placed the vehicle more into the category of a borrowed or misappropriated vehicle in an isolated or casual use.
In our view the determination of the "furnished for regular use" exclusion should be based as much on the purpose for which the automobile is furnished as on the mathematical total of the amount of time the automobile is used by the insured.[2] Under this reasoning the use at the time of the accident is a significant consideration.
In the present case the vehicle was not furnished for Hendrix's regular use for personal purposes. Nor was it furnished to him at all insofar as the trip was concerned which gave rise to the liability at issue in this litigation.[3] Indeed, if the vehicle at the time of the accident was truly one furnished for his regular use, Hendrix would not have needed special permission to use it at the time. We therefore view the particular use at the time of the accident as an irregular use, both in relation to the purpose for which the employer furnished the vehicle and the purpose for which the employee habitually, principally and regularly used the vehicle.[4]
This reasoning also accords with the public policy of the state that liability insurance is not issued primarily for the protection of the insured, but for the protection of the public. Davies v. Consolidated Underwriters, 199 La. 459, 6 So.2d 351 (1942); Webb v. Zurich Ins. Co., 251 La. 558, 205 So.2d 398 (1967). Here, Hendrix's use at the time of the accident was a personal use for which he ordinarily would have used his own car (which was covered by the policy), and the fact that he used instead a non-owned vehicle which usually was stored for the evening after working hours should not redound to the detriment of the tort victim in the interpretation of the exclusion in the liability policy.
Finally, where an insurance policy provision is susceptible of two reasonable interpretations, the construction most favorable to the insured must be accepted.
*37 We conclude that the "furnished for regular use" exclusion is not applicable to an isolated or casual personal use by the named insured when the vehicle being used at the time of the accident was regularly furnished by the named insured's employer exclusively for business purposes. See also Schoenknect v. Prairie State Farmers Ins. Assoc., 27 Ill.App.2d 83, 169 N.E.2d 148 (1960); 86 A.L.R.2d 937, § 7 (1962); 13 Couch, Insurance § 45:1062, 1063 (1965).

II
In the December 13, 1974 accident plaintiff injured her back, neck and right leg and received emergency room treatment. Five days later she consulted a physician, who found muscular tenderness, spasm and limitation of motion and diagnosed moderately severe cervical and lumbar strains. He prescribed heat, physiotherapy, medication and bed rest. Her neck pain subsided rapidly, but her back injury required treatment through March 12, 1975, at which time she was asymptomatic and was discharged. The medical bill was $286.00. She also sustained a property loss of $684.18.
The record supports an award of $3,500.00, plus the special damages of $960.18.

III
Plaintiff's original suit against Hendrix, Maryland and the United States was removed to federal court. Plaintiff then compromised the claims against Hendrix and the United States, with each paying $1,500.00. The matter was then transferred back to state court.
Citing Harvey v. Travelers Ins. Co., 163 So.2d 915 (La.App.3rd Cir. 1964), Maryland argues that Hendrix and the United States were both solidarily co-obligors and that plaintiff's recovery should be reduced because of the compromise with the solidary co-obligors.
Maryland did not prove the United States was solidarily liable and is not entitled to any consideration on account of the payment by that defendant.
However, Maryland and Hendrix are debtors in solido, inasmuch as they are both obliged to the same thing so that each may be compelled for the whole. C.C. art. 2091. Payment by one exonerates the other toward the creditor. Accordingly, Hendrix's payment of $1,500.00 exonerates Maryland to that extent, and the judgment must be reduced by $1,500.00. Porter v. State Farm Mutual Auto. Ins. Co., 342 So.2d 1265 (La. App.4th Cir. 1977).[5]
Accordingly, the judgment of the trial court is reversed, and it is now ordered that judgment be rendered in favor of plaintiff and against defendant in the amount of $2,960.18, with judicial interest from the date of judicial demand until paid. All costs in both courts are assessed against defendant.
REVERSED AND RENDERED.
NOTES
[1] In the case of an employer-employee relationship there are three principal situation possibilities: (1) the employer furnishes an automobile (either a specific vehicle or a motor pool from which a non-designated vehicle is regularly available) for the employee's unlimited and unrestricted use; (2) the employer furnishes an automobile for the employee's limited use (usually restricted to business purposes), and the accident occurs while the employee is in the scope of that limited use; or (3) the employer furnishes an automobile for the employee's limited use, and the accident occurs while the employee is outside the scope of that limited use.

In the first two situations the "furnished for regular use" exception clearly applies. The third situation, presented by this case, offers a more difficult question for consideration.
[2] Thus, in Cotton States Mut. Ins. Co. v. Falls, 114 Ga.App. 812, 152 S.E.2d 811 (1966), the exclusion was applied when the vehicle was left by the insured's stepson, without intent to claim it for some months and without restriction as to the insured's use, and was used by the insured as he pleased, although he also had another automobile which he used with equal frequency.
[3] Under similar factual circumstances (except that the employee had the employer's special permission for the personal mission during which the accident occurred) the court in Pacific Automobile Ins. Co. v. Lewis, 56 Cal.App.2d 597, 132 P.2d 846 (1943) stated that "whatever may be said of other times and places, this car was not furnished for his regular use, insofar as this particular trip [was] concerned". And in Safeco Ins. Co. v. Thomas, 244 Cal.App.2d 204, 52 Cal.Rptr. 910 (1966) the "regular use" exception was held inapplicable where the employee did not use the car for social purposes, and his use to go for a drink after checking into a motel on a business trip was deemed to be isolated, incidental or casual personal use. The court stated:

"Whether an automobile is furnished by another to an insured for his regular use may reasonably depend upon the time, place and purpose for which it is to be used. One furnished for all purposes and at all times and places would clearly be for his regular use. One furnished at all times but strictly for business purposes alone could hardly be said to have been furnished for his regular use at a time and place when it was being used for personal purposes ".
[4] In Farm Bureau Mut. Auto Ins. Co. v. Marr, 128 F.Supp. 67 (D.N.J. 1955) the court observed that a vehicle "furnished at all times but strictly for business purposes alone could hardly be said to have been furnished for his regular use at a time and place when it was being used for personal purposes".
[5] There is no basis to reduce the judgment by one-half as was done in Harvey v. Travelers Ins. Co., above, because this defendant was not deprived by the compromise of the right to contribution from Hendrix. No such right ever existed because of the contract of insurance.