559 So.2d 898 (1990)
Kathy H. LEMOINE, Individually and as Parent of Ryan Lemoine
v.
Kenneth J. HERRMANN, McDermott, Inc., and INA Aetna Insurance Company.
No. 89-CA-1095.
Court of Appeal of Louisiana, Fourth Circuit.
March 29, 1990.
Writ Denied June 1, 1990.
*899 R.A. Osborn, Jr., Gretna, for plaintiff/appellant.
Overton T. Harrington, Jr., Waldmann & Harrington, Gretna, for defendants/appellants.
David V. Batt, Lisa Montgomery Lewis, Lobman, Carnahan & Batt, Metairie, for defendant/appellee.
Before SCHOTT, C.J., and KLEES, and ARMSTRONG, JJ.
ARMSTRONG, Judge.
This appeal arises out of two separate suits consolidated for trial, and on appeal. The issues will be treated in this opinion, but separate decisions will be rendered in each case.
Plaintiff, Henry Scroggins ("Scroggins"), and defendant, Kenneth Herrmann ("Herrmann"), appeal the trial court's granting of defendant, State Farm Mutual Automobile Insurance Company's ("State Farm"), motion for summary judgment. We affirm.
This case arises out of an automobile accident which occurred on July 10, 1983, and in which an automobile driven by plaintiff/appellant, Scroggins, was struck by an automobile driven by defendant/appellant, Herrmann, whose vehicle was owned by his employer, defendant, McDermott, Inc. ("McDermott"). Scroggins received moderate injuries in the accident, but his passenger, plaintiff, Kathy Lemoine, was severely and permanently injured. Scroggins and Ms. Lemoine each filed separate suits which were later consolidated. A number of insurance companies were named as defendants in the two suits. One of the original defendant-insurers filed a third-party demand against State Farm, which had issued a personal automobile policy to Herrmann.
Ms. Lemoine settled her claim against McDermott, which became subrogated to her claim against Herrmann. Thereafter, Scroggins settled his claim against McDermott in return for an assignment of rights against Herrmann. In addition, he was assigned by McDermott, Ms. Lemoine's original right against Herrmann. Scroggins went to trial and received a judgment in his favor on each of the two assignments of rights against Herrmann, totalling $50,000.00. Herrmann then filed a petition seeking payment and/or indemnity under the personal automobile liability policy issued to him by State Farm. Scroggins intervened, seeking recognition of his rights as embodied in his judgments against Herrmann. State Farm subsequently filed a motion for summary judgment on the ground that Herrmann's personal policy did not cover accidents while he was driving an automobile furnished or made available for his regular or frequent use, such as the company car being driven by him at the time of the accident. The trial court agreed and subsequently granted State Farm's motion for summary judgment.
On appeal Scroggins and Herrmann claim that the trial court erred in granting State Farm's motion for summary judgment.
La.C.C.P. art. 966(B) provides that a trial court "shall" grant a party's motion for summary judgment:
"[I]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law."
A court, in considering a motion for summary judgment, should resolve every reasonable doubt against the mover. Burke v. Occidental Life Insurance Company, 416 So.2d 177 (La.App. 4th Cir.1982).
The issue on appeal centers on a provision contained in Herrmann's State Farm policy. The policy provides liability coverage for "non-owned cars" used by Herrmann. A "non-owned car" is defined in the policy as a car not:
*900 "1. owned by,
2. registered in the name of, or
3. furnished or available for the regular or frequent use of:
you, your spouse, or any relatives."
(emphasis ours)
The policy behind these limitations was stated by this court in Nevels v. Hendrix, 367 So.2d 33 (La.App.4th Cir.1978), where the issue concerned a provision excluding coverage for automobiles furnished for the "regular use" of the employee. We said:
"[T]he purpose of the insuring agreement... as to vehicles not owned by the insured, is to provide coverage during the occasional or casual use of such vehicles, but to exclude coverage of the frequent, habitual or principal use of such vehicles which would substantially increase the risks of the insurer beyond those contemplated when the parties entered into the insurance contract.

* * * * * *
"The basic reasoning underlying the `furnished for regular use' exclusion in employment situations is that the family automobile policy is not designed to cover an employer's vehicle regularly used by the employee for employment purposes (since the employer should cover these risks) or an employer's vehicle regularly used by the employee for personal purposes (since if the employer does not cover these risks, the employee should do so at an additional premium because of the additional exposure)."[1]
Portions of depositions taken of Herrmann and two other McDermott employees, Herrmann's immediate and once removed supervisors, were filed into the record in support of State Farm's motion for summary judgment. Based upon these depositions, and the policy provisions, the trial court found that there was no genuine issue as to material fact, and that the policy did not cover the McDermott vehicle Herrmann was driving at the time of the accident.
In his reasons for judgment the trial judge wrote that Herrmann "stated that he used the same car on a daily basis for almost six months prior to the accident." This statement of fact is not supported by the record. At his deposition Herrmann was asked:
"Q [F]rom January 1, 1983 until the accident, how frequently did you use that vehicle?"
A Just about everyday. I didn't have it in January. I didn't get the car till around February, I believe. I don't remember.
Q Okay. Well, that's what I'm trying to
A On a daily basis.
Q Okay. Between January and February did you use a vehicle?
A We had trucks, company trucks that were assigned to the division.
Q All right. Who was your supervisor?"
The trial judge must have been relying on the above quoted statement by Herrmann as to when he was given the vehicle to use. The quoted testimony only supports the view that Herrmann used the car on a daily basis for a period of time, but was uncertain as to when he began using it. However, the record does contain other evidence which supports a finding that there is no genuine issue as to Herrmann's having been driving a McDermott car which was furnished or available for his frequent use.
There were two types of cars McDermott provided for use by its employees. "Company cars" were those permanently assigned to a particular employee. "Pool cars" were those assigned to an employee on a temporary basis. Herrmann was driving a pool car at the time of the accident. Appellant, Scroggins, filed a supplemental memorandum in opposition to State Farm's motion for summary judgment, which had attached to it a "McDermott pool car inventory form." As argued by Scroggins and Herrmann in their briefs on appeal and at *901 oral argument, this form shows that Herrmann checked out the car in question on May 10,1983. This was two months before the July 10, 1983 accident out of which this litigation grew. This form reflects that the vehicle was returned on July 11, 1983, and that it was wrecked. The form also shows that Herrmann used two other automobiles in April, 1983, for a total of just under seven days.
It is not known whether the trial court considered this pool inventory form in ruling on the motion for summary judgment. Based upon his conclusions it does not appear that he did. Regardless, it is part of the record and will be considered by us in reaching our decision. See La.C.C.P. art. 2164.
Appellants maintain that even considering the record evidence a genuine issue of material fact exists as to whether Herrmann had a vehicle which was furnished or available for his regular or frequent use. Appellants argue that the wording of the policy provision is vague and ambiguous. The briefs of the parties contain material on the issue of why Herrmann had the vehicle in question. The thrust of appellants' argument is that Herrmann ordinarily did not have a car and only had this one because of some particular tasks he was performing. Therefore, it is argued, he had no car furnished or available for his regular or frequent use.
The rules established for the construction of contracts in general apply to the construction of insurance policies. Harmon v. Lumbermens Mutual Casualty Company, 247 La. 263, 170 So.2d 646 (La. 1965); Cambre v. Traveler's Indemnity Company, 404 So.2d 511 (La.App.4th Cir. 1981). The intent of the parties must be determined in the light of the policy provisions when the policy terms are clear and unambiguous and lead to no absurd consequences. Official Revision Comment (b) to La.C.C. art. 2046; Cambre, supra. The terms of a contract of insurance must be given their generally prevailing meaning and understood in their common and usual significance. La.C.C. art. 2047; Harmon, supra; Cambre, supra.
Although doubtful or ambiguous clauses or provisions must be construed in favor of the insured and against the insurer, courts should not pervert language or create ambiguity where none exists. Cambre, supra; Andrus v. Police Jury of Parish of Lafayette, 270 So.2d 280 (La.App.3rd Cir. 1972).
Webster's II New Riverside University Dictionary, (1984) defines "regular", in pertinent part, as:
"1. Customary, usual, or normal.... 5.
Happening at fixed intervals: PERIODIC.... 6.
Not varying: CONSTANT...."
It defines "frequent" as:
"Happening or appearing often or at close intervals."
In applying these definitions to the instant case we must keep in mind the policy behind these types of provisions. Herrmann's policy was primarily intended to cover the risk to Herrmann, other persons, and property, growing out of the ownership and use of his personal automobile, which was listed on the declarations page of the policy, and the incidental, infrequent, and irregular use of vehicles not owned by him. There can be no question but that this was the intent of the parties to the contract of insurance. Herrmann's premium was calculated based upon these factors.
We find no ambiguity in the wording of the policy. The policy phrases the words regular and frequent in the alternative. Clearly, these are two types of uses for which coverage does not apply. Common sense dictates that regular use is inclusive of frequent use. Frequent use is something less than regular use. Appellants' argument appears to be directed to regular use, not frequent use. It cannot reasonably be argued that frequent use is limited to the use of a car on a daily basis for the term of employment. This, and much less, would be a regular use. Is it the position of appellants that the duration of the use or availability must be for more than two months to be considered frequent? Perhaps it must be more than six months? At *902 what point then would appellants have frequent use become regular use?
While it is unclear whether Herrmann's use of McDermott vehicles, including the one he was operating at the time of the accident, could be considered regular, as that term is commonly used, it is clear to this court that his use, particularly of this vehicle, was frequent. Herrmann had used a vehicle for seven days in April, and had been using the same vehicle for two months at the time of the accident. There is no doubt that at the time of the accident Herrmann was using a McDermott car which had been furnished for his frequent use.
In the Hendrix, supra, case, the employee had been furnished an automobile by his employer with specific instructions that he was only to use it during working hours, and to travel to and from his place of employment. The employee had an accident at eight o'clock one evening while driving the company car. This court held that an exclusion such as the one in the instant case, but referring only to cars furnished for regular use, was not applicable to an isolated or casual personal use by the named insured when the vehicle being used at the time of the accident was regularly furnished by the insured's employer exclusively for business purposes. The court focused on the purpose for which the automobile was furnished to the employee, as well as the mathematical total amount of time the automobile was used by the insured.
Appellants argue that the reasoning of the Hendrix case is applicable to the facts of the case at bar. We disagree.
Herrmann testified that it was "more or less a procedure at McDermott" that the cars taken home by employees were available for personal use. He was never told that this was the case, but said that "everyone else was doing it." Another McDermott employee, Dave Kenny, Herrmann's once removed supervisor, testified that he had "limited" personal use of his own McDermott car. He did not elaborate further on what "limited" personal use meant. A third employee, Paul LeBlanc, Herrmann's immediate supervisor, testified that, although no one ever explained or set limits on the use of McDermott vehicles, "it was understood" that they were not to be used for anything other than business purposes.
The evidence shows that at least insofar as Herrmann was concerned, the McDermott automobile was available for his frequent personal use. The testimony of all three McDermott employees establishes that there was no official policy directly communicated to them that the vehicles were not to be used for personal errands. This is unlike the facts in Hendrix where the employee was informed that the car was not available for any personal use whatsoever. Certainly, Herrmann was not authorized to chase another automobile at high speeds while driving the McDermott car. But that alone does not place the use by Herrmann into the category of that found in Hendrix. We cannot read Hendrix so narrowly to say that, although Herrmann was furnished the automobile for business and personal use, his actions in chasing Scroggins' vehicle took it out of personal use into a prohibited use such that the policy provision in question did not exclude coverage.
Based upon the record evidence, we find that there is no genuine issue as to material fact and that the trial court properly granted State Farm's motion for summary judgment.
For the foregoing reasons we affirm the judgment of the trial court.
AFFIRMED.
SCHOTT, C.J., concurs.
SCHOTT, Chief Judge, concurring:
I agree with the majority that there is no doubt or contradiction in the record that the automobile Herrmann was driving was furnished or available for his frequent use. I also agree that Nevels v. Hendrix, 367 So.2d 33 (La.App. 4th Cir.1978) does not support his claim to coverage at the time of the accident.
Nevels held that the provisions of the employee's personal auto policy excluding *903 coverage for a company car furnished for business purposes would not apply if the employee was using the car for personal purposes when he had the accident sued on and if his personal use of the car was prohibited by the company. In other words, Nevels held that no coverage attached when the employee picked up the car for business purposes but would attach when the employee began using the company car for personal use in violation of company rules.
In order for Herrmann to bring himself under the Nevels exception-to-the-exclusion rule he had to show that he was using the car for personal purposes in violation of company rules when he had his accident. Excerpts from Herrmann's deposition contain a clear acknowledgment that he had the unrestricted use of this car at all times and for all purposes. With this sort of testimony he eschewed the Nevels exception which is based upon the employee's having only limited use of the car in the first place. In addition, no where in this record is there any evidence that Herrmann was indeed using the car for personal use when he had the accident.
Therefore, the motion for summary judgment in favor of the insurer was correctly granted.
NOTES
[1] It is questionable whether there is actually increased exposure when an employee is driving a company car on a personal mission. Whether he is in his own vehicle or the company vehicle on the personal mission, if covered under the personal policy, the exposure is the same.