MARGARET BUTLER AND WILLIAM BUTLER, PLAINTIFFS-RESPONDENTS AND CROSS-APPELLANTS, v. BONNER & BARNEWALL, INC., A CORPORATION, DEFENDANTS.

MARY BUENAGA, DEFENDANT-THIRD-PARTY PLAINTIFF-RESPONDENT AND CROSS-APPELLANT, v. PEERLESS INSURANCE COMPANY, THIRD-PARTY DEFENDANT-APPELLANT AND RESPONDENT, AND OHIO CASUALTY INSURANCE GROUP AND WEST AMERICAN INSURANCE CO., THIRD-PARTY DEFENDANTS-RESPONDENTS.

Argued May 5, 1970—Decided July 24, 1970.

568

Mr. *Marshall Selikoff* argued the cause for Peerless Insurance Company (*Messrs. Jung, Selikoff, Rathman & Dwyer,* attorneys; *Mr. Selikoff,* of counsel; *Mr. John R. Zimmerman,* on the brief) .

Mr. *Hugh J. O'Gorman* argued the cause for Mary Buenaga (*Messrs. Cunneen & O'Gorman,* attorneys; *Mr. O'Gorman,* of counsel and on the brief).

Mr. *Arthur J. Messineo, Jr.* argued the cause for Margaret Butler and William Butler (*Messrs. Messineo & Messineo,* attorneys; *Mr. Arthur J. Messineo, Jr.,* of counsel; *Mr. Dennis P. LaHiff,* on the brief).

Mr. *Robert E. Monaghan* argued the cause for Ohio Casualty Insurance Group and West American Insurance Co. (*Messrs. Schneider & Morgan,* attorneys; *Mr. Monaghan,* of counsel).

The opinion of the court was delivered by

HALL, J. This complicated controversy about automobile liability insurance coverage arose out of a one car accident on May 5, 1967 in which plaintiff Margaret Butler sustained personal injuries. She was a passenger in a car driven by defendant-third-party plaintiff Mary Buenaga and owned by defendant Bonner and Barnewall, Inc. (Bonner), a processing concern which employed Mrs. Buenaga's husband as a salesman. The car had been furnished to him by the company and he was permitted to keep it at his home. The vehicle was not being used for business purposes at the time of the accident; the two ladies were on their way to a personal social gathering. A few weeks later Mrs. Butler and her husband, *per quod,* sued Mrs. Buenaga and Bonner for her injuries and consequential damages. The latter cross-claimed against Mrs. Buenaga for property damage to the car.

Bonner had a general liability insurance policy issued by third-party defendant Peerless Insurance Co. (Peerless) covering its operations, including automobiles owned by it. Also insured under the policy was "any other person while using an owned automobile * * * with the permission of the named insured [Bonner], provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission * * *." Mrs. Buenaga sent the suit papers to Peerless to defend for her, which promptly declined to do so on the ground that at the time of the accident she was an "unauthorized operator of the insured vehicle, and said vehicle was being operated by you without the knowledge, permission or consent of our named assured [Bonner]." The proofs in the record on behalf of Peerless show both oral and written admonitions from the president of Bonner to Mr. Buenaga that the car was not to be driven by anyone but himself, said to have been occasioned by Bonner's inquiry of its insurance broker allegedly resulting in the advice that the policy coverage did not extend to any other operation or use and that the premium cost would be

much higher if use or operation by other than employees was allowed. The proofs on behalf of Mrs. Buenaga showed, on the contrary, oral permission by the president for her to operate the car occasionally for personal or family use and knowledge by him of such use. This conflict in the evidence has not been judicially resolved during the course of the litigation to date.

Mrs. Buenaga's husband also owned a personal car which was insured by a "Family Automobile Combination Policy" issued to him by third-party defendant Ohio Casualty Insurance Group and West American Insurance Co. (Ohio). Its policy contained rather confusing provisions relating to persons insured in connection with non-owned automobiles. It defined "Named Insureds" as "the individual named in Item 1 of the declarations [Mr. Buenaga] and also includes his spouse, if a resident of the same household [Mrs. Buenaga]." "Non-Owned Automobile" was defined as "an automobile or trailer not owned by or furnished for the regular use of either the named insured or any relative, other than a temporary substitute automobile." Coverage as to non-owned automobiles was accorded to:

"1. the named insured,
2. Any relative, but only with respect to a private passenger automobile or trailer, provided the actual use thereof is with the permission of the owner."

When Peerless refused to defend, Mrs. Buenaga sent the suit papers to Ohio, which at first undertook the defense. After making an investigation, it advised—reasonably, we believe, with respect to any claim of estoppel—that it would not continue the defense by reason of non-coverage, stating:

We have now completed our investigation of the claim and said investigation reveals that at the time of the happening of this accident, you were operating a motor vehicle furnished to your husband for his regular use by his employer, Bonner and Barnewall, Inc. Your policy of insurance specifically provides that there is no coverage for you as respects to any automobile furnished for the regular use of either you or any member of your household. We

therefore regret to inform you that there is no coverage afforded under your policy of insurance for the claim presented against you.

Mrs. Buenaga thereupon engaged a personal attorney who filed the third-party complaint against Peerless and Ohio in separate counts. Each count asserted that Mrs. Buenaga was covered under the policy issued by that insurer and sought a declaration of coverage, a direction to defend the negligence action and to pay any resulting judgment, and a money award to pay all Mrs. Buenaga's costs and attorney fees incurred in the defense of the negligence action and "the prosecution of this policy action as well." The answer of each insurer denied coverage. Peerless filed a cross-claim against Ohio for contribution and for indemnification, the latter on the basis that if Peerless was held to have coverage, Ohio had it too and Ohio's coverage was primary. Ohio asserted in its answer that if it were held to have coverage, Peerless also had it and Ohio's was excess. Plaintiffs Butler have participated in the third-party action and their negligence suit has lain dormant in the meantime.

Mrs. Buenaga moved for summary judgment against both insurers and the present consolidated appeals derive from the Law Division's rulings on the motion. The proofs on the motion comprised the pleadings, answers to interrogatories (not included in the appendix), the depositions of Mr. and Mrs. Buenaga and the president of Bonner and the insurance policies. The trial court held that the Peerless policy covered, regardless of whether Mrs. Buenaga's operation of the car had been prohibited or permitted by Bonner, and so it was obligated to defend, pay any judgment (within the policy limits) and reimburse Mrs. Buenaga for reasonable legal fees and expenses incurred. No proofs were presented or conclusion stated as to the amount of such reimbursement.[1] The

[1] It is not clear from the argument transcript or the trial court's order whether such reimbursement was to include fees and expenses in connection with the third-party complaint as well as with reference to the negligence action. Whether any such right exists as to the former is an open question. It was not involved in the recent

court also held that the car involved in the accident was within the "regular use" exception of the Ohio policy and so that company had no coverage and no liability. The Buenaga motion for summary judgment against Ohio was therefore denied. Thereupon Ohio's counsel made an oral motion to dismiss the third-party complaint and Peerless' cross-claim against it, which was immediately granted.

 Peerless appealed to the Appellate Division from all aspects of the trial court's action. Mrs. Buenaga cross-appealed from the rulings in favor of Ohio. The Butlers took the same position as Mrs. Buenaga.[2] The Appellate Division affirmed, 107 *N. J. Super.* 80 (1969) (*sub nom. Butler v. Buenaga*).

Peerless petitioned for certification and Mrs. Buenaga and the Butlers cross-petitioned. All three applications were granted. 55 *N. J.* 168 (1969)[3] In this court Peerless urges that its policy does not afford coverage, and the lower tri-

---

case of *Burd v. Sussex Mutual Insurance Company*, 56 *N. J.* 383 (1970), although in a California case discussed in that opinion, *Gray v. Zurich Ins. Co.*, 65 *Cal.* 2d 263, 54 *Cal. Rptr.* 104, 115, 419 *P.* 2d 168 (1966), the court allowed recovery only of the costs, expenses and fees incurred by the insured in defending the injured party's suit.

[2]The Appellate Division quite properly commented that the appeals were interlocutory, without leave first granted, and on its own motion granted leave to appeal *nunc pro tunc*. Where a suit involves multiple claims, as here, a court may direct the entry of a final judgment upon less than all of the claims only if it determines there is no just reason for delay. *R.* 4:42–2. In the absence of such direction and determination, an order which adjudicates less than all of the claims is not appealable as of right before the entry of judgment adjudicating all the claims. There was no such direction and determination by the trial court here, and indeed there could not well be as to Peerless, since there remained for determination the matter of the amount of reimbursement due to Mrs. Buenaga for fees and expenses incurred.

[3]Under the 1969 Rules Revision, application should have been made to this court for leave to appeal, rather than certification, since the Appellate Division judgment is interlocutory. (See footnote (2)). *R.* 2:2–5. Note Tentative Draft Comment (Pressler ed.. p. 163). We are treating the grant of the petitions for certification as the allowance of leave to appeal.

bunals were wrong in deciding to the contrary, but that the Ohio contract does cover and so the third-party complaint and its cross-claim against Ohio should not have been dismissed. Mrs. Buenaga contends, as do the Butlers, that both the Peerless and Ohio policies cover. Ohio takes the view that only the Peerless contract furnishes coverage and so the determination that its policy did not was correct.

As to the Peerless policy, the controversy is essentially one of law—whether *Matits v. Nationwide Mutual Ins. Co.,* 33 *N. J.* 488 (1960), and its progeny or the earlier decision in *Baesler v. Globe Indemnity Co.,* 33 *N. J.* 148 (1960), is controlling. *Baesler* held that where the car owner had expressly prohibited the initial permittee from allowing others to use or drive the insured car, there was no coverage when that prohibition had been violated. *Matits* thereafter adopted the "initial permission rule" in this state and held that "if a person is given permission to use a motor vehicle in the first instance, any subsequent use short of theft or the like while it remains in his possession, though not within the contemplation of the parties, is a permissive use within the terms of a standard omnibus clause in an automobile liability insurance policy." 33 *N. J.* at 496–497. The more restrictive omnibus clause in the Peerless policy must be deemed to have only the same legal connotations as the clause in *Matits. Selected Risks Indemnity Co. v. Zullo,* 48 *N. J.* 362 (1966). The lower courts in the case at bar found that *Matits* controlled and that *Baesler* was distinguishable, thereby making of no consequence in this connection the conflict in the proofs as to the extent of the permission granted by the president of Bonner.

Any doubt about the question has been resolved since the decision of the Appellate Division by our opinion in *Odolecki v. Hartford Accident & Indemnity Co.,* 55 *N. J.* 542 (1970). There we expressly overruled *Baesler,* finding it inconsistent with the policy and holdings of *Matits* and subsequent cases. We concluded that once an owner voluntarily hands over the keys to his car, the extent of permis-

sion he actually granted, either with regard to scope of use or limitation of operator, is irrelevant. No sound reason is advanced why *Odolecki* does not settle the instant case as far as Peerless' coverage and obligations are concerned. The holding of the Appellate Division with respect thereto is therefore affirmed, subject to resolution of the previously mentioned ambiguity concerning the extent of reimbursement due from it to Mrs. Buenaga for fees and expenses incurred and the determination of the appropriate amount thereof.

The matter of coverage under the Ohio policy is a much more difficult question and we are of the view that it probably cannot be decided with assurance on a summary judgment motion and at least that it was improper to do so on the present record. The Appellate Division simply said that, since it is clear that Mr. Buenaga had the "regular use" of his employer's car, it was an uninsured "non-owned automobile" under the Ohio policy. We think the problem is not that simple. Further fact development and findings at a plenary trial, with further consideration of policy and applicable law at the trial level, seem indicated.

The general function and purpose of a "regular use" exception to non-owned vehicle coverage under a family automobile policy is well explained in *American Casualty Co. v. Lattanzio,* 78 *N. J. Super.* 404, 410–411 (App. Div. 1963).

An exclusionary clause or definition, such as the one here involved, manifests an intention on the part of the insurer to protect itself from a situation whereby an insured could purchase a policy covering on automobile and be covered without qualification as to all automobiles available for his use. Annotation. 173 *A. L. R.* 901, 904 (1948) ; see also *Rodenkirk, for Use of Deitenbach v. State Farm Mut. Automobile Ins. Co., supra* [325 Ill. App. 421, 60 N. E. 2d 269], and *Vern v. Merchants Mut. Casualty Co.,* 21 *Misc. 2d* 51, 118 *N. Y. S. 2d* 672 (*Sup. Ct.* 1952). Thus, this type of policy extends coverage to the casual or occasional driving of automobiles other than those specifically covered without payment of an extra premium, while excluding the use of automobiles which are furnished for the regular use of the insured. *Cf. Travelers Indemnity Company v.*

_Hyde_, 232 _Ark._ 1020, 342 _S. W. 2d_ 295 (_Sup. Ct._ 1961). The clause in question represents an attempt on the part of the insurer to strike a balance between the desire of the insured to be covered, even though not always using the owned automobile, and its own right to receive payment of premiums based upon the risk presented by the number of automobiles operated. _Cf. Lumbermen's Mut. Casualty Co. v. Pulsifer_, 41 _F. Supp._ 249, 251 (_D. Me._ 1941). It has been held that the general effect of such a clause is to give coverage to the insured while engaged in only infrequent or merely casual use of the non-owned automobile, but not in respect to the operation of another automobile which he frequently uses or has the opportunity of using. _Aler v. Travelers Indemnity Co._, 92 _F. Supp._ 620 (_D. Md._ 1950).

See also _Cox v. Santoro_, 98 _N. J. Super._ 360 (App. Div. 1967).

██ Also to be kept in mind is the general rule of construction that if the controlling language of a policy will support two meanings, one favorable to the insurer and the other to the insured, the interpretation favoring coverage should be applied, as well as the subsidiary rule that if the clause in question is one of exclusion or exception, designed to limit the protection, a strict intrepretation is in order. _Mazzilli v. Accident & Casualty Insurance Co._, 35 _N. J._ 1, 7, 8 (1961). And the matter of the reasonable expectations of the average policyholder may enter the picture. See _Perrine v. Prudential Ins. Co. of America_, 56 _N. J._ 120 (1970).

There may well be mixed questions of fact and law, not resolvable on a motion for summary judgment, as to whether the company car was furnished for the "regular use" of _Mr. Buenaga_ (Ohio's policyholder) within the proper meaning of that term in the policy. At the outset the issue arises whether "regular use" for insurance coverage purposes should be held to encompass anything less than unrestricted day-to-day use of an employee when the employee is allowed to keep the car at his home. Even if "regular use" should be defined abstractly as not requiring completely unrestricted use, there would still be the matter of the intended extent of the "regular use" in this case. The previously mentioned

written communication to Mr. Buenaga from Bonner's president referred only to a limitation that Mr. Buenaga alone was to drive the vehicle and made no mention of any limitation to business use, although the president's deposition testimony was that Buenaga was orally instructed it was to be used only for business purposes. This contrasts with the deposition testimony on behalf of the Buenagas that occasional personal or family use by Mrs. Buenaga was known to and permitted by the employer. It would appear that a judicial fact finding thereon will be required.

The terminology of the previously quoted Ohio policy provisions relating to non-owned automobile coverage is confusing with respect to the application of the "regular use" exception to Mrs. Buenaga. We refer to the intermixed use of "named insured", "spouse" and "relative". For example, does "relative" include the policyholder's spouse or does the term refer to kin other than the spouse? And does the policy not cover even if the car was furnished only for the "regular use" of the policyholder. but his wife was driving it at the time of the accident? She is the person seeking coverage and should she, as a matter of policy and law and regardless of the terminology and definitions in the contract, be entitled to protection since under this hypothesis the car was furnished, not for her "regular use", but for that of her husband? These questions we do not find adequately presented in the briefs before us.

The further clause that non-owner coverage exists only "provided the actual use thereof is with the permission of the owner" raises the question whether the requirement thereof is to be disregarded by reason of the policy considerations which dictated the result in *Matits* and *Odolecki* or whether different considerations prevail and the clause is to be given literal effect. This question was not discussed in the briefs of the parties. If the latter is to be the case, again a fact finding must be made with respect to the actual permission or limitation imposed by Bonner's president.

Finally, if the Ohio policy does cover, we have the question whether coverage is joint with Peerless or whether one policy (and which one) is primary and the other excess. (Each policy has a different "other insurance" provision). The parties' briefs do not touch this legal problem at all.

We therefore conclude that the order dismissing Mrs. Buenaga's third-party complaint as against Ohio and Peerless' cross-claim against Ohio, affirmed by the Appellate Division, was not justified and that this phase of the matter should be remanded for further proceedings in the Law Division as above suggested.

We do not think that plaintiffs Butler should be required to hold their negligence suit in abeyance pending the outcome of the remand. Peerless' policy has been held to furnish coverage, up to the policy limit, as to the negligence suit and it is required to defend that suit. Since its policy insures the car involved in the accident, it is not unfair to compel it to proceed with that defense now (with Ohio co-operating, if it desires, under some agreeable arrangement so that it will be bound as to negligence and the amount of recovery) and to allow plaintiffs, at their option, to bring it on for trial at once. If there is a recovery, Peerless should be required to pay the judgment up to its policy limit. If the recovery should not exceed that limit (the Ohio policy has the same dollar limit), and the indications to us by plaintiffs' counsel at oral argument were that it would not be likely to, the controversy then remaining would be between Peerless and Ohio as to whether Ohio also covers and whether coverage is joint or on a primary-excess basis, which would not concern plaintiffs or Mrs. Buenaga. These matters, which are the subject of the remand, and all other matters between Peerless and Ohio could thereafter be litigated under der Peerless' cross-claim against Ohio, amended if necessary to include all issues existing at that time. In addition there will remain for determination in the trial court at some stage the extent and amount of Peerless' reimbursement obligation to Mrs. Buenaga earlier discussed.

The judgment of the Appellate Division as to the coverage and obligations of Peerless is affirmed, subject to the further determination just mentioned, and its judgment as to the coverage and obligations of Ohio is reversed and the matter remanded to the Law Division for further proceedings in line with this opinion. Costs at this juncture to plaintiffs and Mrs. Buenaga as against Peerless.

*For affirmance in part, reversal in part, and for reversal and remandment*—Chief Justice WEINTRAUB and Justices FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—6.