645 A.2d 155

PETER G. MALOUF AND MALOUF'S DRIVING SCHOOL, PLAIN-TIFFS, AND KAREN LONIEWSKI, INDIVIDUALLY AND AS GUARDIAN AD LITEM FOR JASON LONIEWSKI AND TARA LONIEWSKI, INFANTS, PLAINTIFFS–INTERVENORS–RE-SPONDENTS, v. THE AETNA CASUALTY AND SURETY COM-PANY, DEFENDANT, AND THE NEW JERSEY AUTOMOBILE FULL INSURANCE UNDERWRITING ASSOCIATION, BY AND THROUGH ITS SERVICING CARRIER, THE HANOVER IN-SURANCE COMPANY AND THE NEW JERSEY AUTOMOBILE FULL INSURANCE UNDERWRITING ASSOCIATION, BY AND THROUGH ITS SERVICING CARRIER, THE STATE FARM FIRE AND CASUALTY COMPANY, DEFENDANTS–APPEL-LANTS, AND THE ALLSTATE INSURANCE COMPANY, DE-FENDANT–THIRD–PARTY–PLAINTIFF, v. RANDY LONIEW-SKI, THIRD–PARTY–DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued June 14, 1994—Decided July 7, 1994.

Before Judges MICHELS, SKILLMAN and KESTIN.

*Stephen J. Foley, Jr.* argued the cause for appellant NJAFIUA by and through its servicing carrier, State Farm Mut. Automobile Ins. Co. (*Campbell, Foley, Lee, Murphy & Cernigliaro,* attorneys; *Mr. Foley,* on the brief).

*Mark S. Hochman* argued the cause for appellant NJAFIUA by and through its servicing carrier, Hanover Ins. Co. (*Gertler & Hanna,* attorneys; *Mr. Hochman,* on the brief).

*John E. Keefe, Jr.* argued the cause for respondents Karen, Jason and Tara Loniewski (*Wilentz, Goldman & Spitzer,* attorneys; *Morris Brown,* of counsel; *Andrea I. Bazer* and *Mr. Keefe,* on the brief).

*James J. Dunn* argued the cause for respondent Randy Loniewski (*Levinson, Axelrod, Wheaton & Grayzel,* attorneys).

The opinion of the court was delivered by

SKILLMAN, J.A.D.

This appeal requires us to construe provisions in two automobile liability insurance policies which exclude from coverage any accident involving an automobile other than the "covered auto" which is "furnished or available for [the insured's] regular use."

Peter G. Malouf (Malouf) owned four automobiles for his personal use and that of his family. Two of these automobiles were insured under a policy issued by the Hanover Insurance Company (Hanover), as a servicing carrier for the New Jersey Automobile Full Insurance Underwriting Association (JUA), and the other two were insured under a policy issued by State Farm Mutual Automobile Insurance Company (State Farm), also as a servicing carrier for the JUA.

Malouf was the President and sole stockholder of Malouf's Driving School, Inc. (Driving School), a corporation engaged in the business of providing driver's education. The Driving School owned four or five automobiles, insured by the Aetna Casualty and Surety Company (Aetna), which were used in this business. These automobiles were operated by driving instructors employed by the Driving School, two or three of whom worked full-time and the others part-time. The full-time instructors had Driving School automobiles regularly assigned to them, which they parked at their homes when they were not being used to give driving lessons. The other Driving School automobiles used by the part-time instructors were parked on the street in front of Malouf's home when they were not in use. Malouf had a set of keys to all of the Driving School's automobiles and, as the sole principal of the corporation, controlled their use.

On December 24, 1988, Malouf used one of the Driving School's automobiles to deliver holiday fruit baskets to his employees and to visit his sister. While Malouf was driving home, he was involved in an accident with an automobile operated by Randy Loniewski, which resulted in serious injuries to Randy, his wife Karen, and their children Jason and Tara.

Randy and Karen Loniewski filed separate personal injury actions on behalf of themselves and their children against Malouf and the Driving School. When questions arose regarding insurance coverage for the accident, Malouf and the Driving School filed a declaratory judgment action against Aetna, the JUA, by and through its servicing carriers, Hanover and State Farm, and the Allstate Insurance Company (Allstate), which provided one million dollars of excess coverage to the Driving School under an umbrella policy. Subsequently, Karen Loniewski, on behalf of herself and as guardian ad litem for Jason and Tara, was permitted to intervene in this action. Randy Loniewski was subsequently made a party through a third-party complaint filed by Allstate.

The coverage action was brought before the trial court on a motion by Malouf and the Driving School for summary judgment. The trial court concluded that because the Driving School's automobiles were not available to Malouf during the four-hour period each weekday afternoon when they were used for driving lessons and because Malouf did not actually make any significant personal use of those automobiles, the vehicles did not fall within the exclusion in the JUA policies for non-covered vehicles "furnished or available for [his] regular use." [1]

The Loniewskis subsequently settled their claims against Malouf and the Driving School. Under the terms of this settlement, Aetna, Allstate, Hanover and State Farm all agreed to pay the full amount of their policies, subject to the right of Hanover and State Farm, as the JUA's servicing carriers, to appeal the judgment in the coverage action. The Loniewskis agreed that in the event the judgment against Hanover and State Farm was reversed, they would not seek to recover any further sums from Malouf personally.

---

[1] The trial court also concluded that Malouf was entitled to coverage to the full extent of the policy limits of both JUA policies. Since we conclude that these policies do not provide coverage for this accident, we do not have to address this issue.

State Farm and Hanover filed separate notices of appeal from the judgment in the coverage action, which we now consolidate. We conclude that the JUA policies did not provide coverage to Malouf for his operation of the Driving School's automobiles. Therefore, we reverse.

The exclusionary clauses in both the Hanover and State Farm policies are identically worded:

> We do not provide Liability Coverage for the ownership, maintenance or use of:
> ... Any vehicle, other than "your covered auto," which is ... furnished or available for your regular use.

Although there is no New Jersey case law interpreting this precise exclusionary language, there is a line of cases interpreting exclusions for non-covered vehicles "furnished for the regular use" of the insured. In *American Casualty Co. v. Lattanzio*, 78 *N.J.Super.* 404, 410–12, 188 *A.*2d 637 (Ch.Div.1963), the court discussed the purpose of this kind of exclusionary clause:

> An exclusionary clause or definition, such as the one here involved, manifests an intention on the part of the insurer to protect itself from a situation whereby an insured could purchase a policy covering one automobile and be covered without qualification as to all automobiles available for his use.... It has been held that the general effect of such a clause is to give coverage to the insured while engaged in only infrequent or merely casual use of the non-owned automobile, but not in respect to the operation of another automobile which he frequently uses or has the opportunity of using.
>
> ....
>
> ... The frequency of the use made of the vehicle by the insured does not necessarily govern. The question is not whether he frequently used the vehicle but whether it was "furnished" for his regular use.
>
> [Citations omitted.]

In *DiOrio v. New Jersey Mfrs. Ins. Co.*, 63 *N.J.* 597, 603–04, 311 *A.*2d 378 (1973), the Court expressed a similar view:

> The word "furnished" connotes ... some general right to use, something more than use with permission on occasions, whether recurring or isolated.... One would expect some plenary right to use, a right so constant or continuous that the named insured would assume his policy of insurance could not fairly be understood to cover it.

*See also Butler v. Bonner & Barnewall, Inc.*, 56 *N.J.* 567, 575–76, 267 *A.*2d 527 (1970).

Based on this interpretation of the exclusionary clause, the Court concluded in its second *DiOrio* opinion that an automobile owned by a partnership which operated a service station came within the exclusion when it was being used by one of the partners because, even though the vehicle was sometimes used for business errands and as a service car for customers whose automobiles were being repaired, the partner under whose personal automobile policy coverage was sought had unrestricted control over the non-covered automobile's use. *DiOrio v. New Jersey Mfrs. Ins. Co.*, 79 *N.J.* 257, 398 *A.*2d 1274 (1979). In explaining why it was unnecessary to decide whether the term "regular use" should be construed to refer to all of the partner's uses of the vehicle (including his business uses), or only to his personal uses, the Court stated:

> [W]hile his *actual* use in that respect may not have been frequent, his *right* to use the [vehicle] for any purpose ... was entirely unrestricted save for those rare occasions when his partner or a customer needed the car.
>
> [*Id.* at 266–67, 398 *A.*2d 1274.]

The exclusionary clause involved in this appeal for any non-covered vehicle "furnished *or available* for [the insured's] regular use" (emphasis added) must be construed at least as broadly as the clause involved in *DiOrio*, because the phrase "available for regular use" is set forth in the disjunctive and thus indicates an alternative basis for exclusion. Moreover, a number of courts have construed an exclusion for non-covered vehicles which are "available for [the insured's] regular use" as having a somewhat different scope than the "furnished for regular use" exclusion involved in *DiOrio*. In *Waggoner v. Wilson*, 31 *Colo.App.* 518, 507 *P.*2d 482, 485 (1972), the court stated that "[t]he terms 'available' and 'furnished' are not synonymous," and that "the potential use of the automobile [must] be to a substantial degree under the control of the insured" in order for it to be considered "available for [his] regular use." *Accord Interinsurance Exch. of Auto. Club of Southern Cal.*, 148 *Cal.App.*3d 1128, 196 *Cal.Rptr.* 456, 461 (1983); *see also Kentucky Farm Bureau Mut. Ins. Co. v. Cook*, 590 *S.W.*2d 885, 890 (Ky.Ct.App.1978) ("The term 'available for

regular use' means that [the] thing to which it refers can usually and regularly be had or be used whenever it is wanted, needed or desired...."), *rev'd in part on other grounds,* 590 *S.W.*2d 875 (Ky.1979); *State Farm Fire & Casualty Co. v. Price,* 101 *N.M.* 438, 684 *P.*2d 524, 528 (Ct.App.) ("Under the 'furnished or available' clause, the test is the availability of an automobile for regular use, not the frequency of the use."), *cert. denied,* 101 *N.M.* 362, 683 *P.*2d 44 (1984); *see generally,* David B. Harrison, Annotation, *When is Automobile Furnished or Available for Regular Use within "Drive Other Car" Coverage of Automobile Liability Policy,* 8 *A.L.R.* 4th (1981). While we find it unnecessary to decide whether the exclusionary clauses involved in this case should be read more broadly than the one involved in *DiOrio,* we are satisfied that, at a minimum, the addition of the term "or available" to the phrase "furnished for regular use" reinforces the Court's conclusion in its second *DiOrio* opinion that regardless of the frequency of an insured's *actual* use of a non-covered vehicle, his unrestricted *right* to the use of such a vehicle is sufficient for this exclusion to apply. 79 *N.J.* at 266–67, 398 *A.*2d 1274.

Malouf clearly had an unrestricted right to use the Driving School's automobiles, since he was the President and sole stockholder of the corporation. Moreover, he exercised this right by retaining a set of keys to each automobile and by parking some of the Driving School's automobiles in front of his house, including apparently the one involved in the accident with the Loniewskis' vehicle. Consequently, this case does not require us to make a determination as to the scope of a third party's permission for an insured to use a non-covered vehicle. Rather, it was solely within Malouf's own discretion whether to make minimal or extensive use of the Driving School's automobiles for his personal purposes. Therefore, his unfettered control over those automobiles was sufficient to activate the exclusion in his personal automobile liability policies for non-covered vehicles "furnished or available for [the insured's] regular use."

Accordingly, the final judgment obligating the JUA, through its servicing carriers, Hanover and State Farm, to indemnify Malouf and the Driving School to the full extent of their policies is reversed.