679 A.2d 678

DONALD E. FISCOR, PLAINTIFF–RESPONDENT CROSS–APPEL-
LANT, v. ATLANTIC COUNTY BOARD OF CHOSEN FREE-
HOLDERS, DEFENDANT–CROSS RESPONDENT, AND MARY-
LAND CASUALTY INSURANCE COMPANY, DEFENDANT–
APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued June 19, 1996—Decided July 19, 1996.

Before Judges SHEBELL and DREIER.

*Michael Silberberg* argued the cause for appellant (*Wolff, Helies & Duggan,* attorneys;  *Mr. Silberberg,* on the brief).

*Michael Grimes* argued the cause for Respondent/Cross Appellant Donald E. Fiscor *(Grimes, Grimes, Grimes & Grimes,* attorneys;  *Mr. Joseph P. Grimes,* on the brief).

*John P. Morris* argued the cause for cross/respondent Atlantic County Board of Chosen Freeholders (*Mr. Morris* and *William P. Busch,* attorneys;  *Mr. Morris* and *Mr. Busch,* on the brief).

The opinion of the court was delivered by

DREIER, P.J.A.D.

Defendant Maryland Casualty Company appeals from a summary judgment declaring it liable under the "non-owned vehicle" provision of a personal automobile insurance policy issued to plaintiff, Donald E. Fiscor, for claims that arose out of an accident that occurred while plaintiff was driving a vehicle owned by defendant Atlantic County Board of Chosen Freeholders.  Plaintiff cross-appeals from another provision of the summary judgment declaring Atlantic County not responsible either as an insurer under *N.J.S.A.* 40A:10–3 or as a self-insured local unit

under *N.J.S.A.* 40A:10–4. For reasons that we will explain, we reverse the declaratory judgment entered against defendant Maryland Casualty, reverse the declaratory judgment entered in favor of the County, and remand for further proceedings in accordance with this opinion.

Plaintiff was the warden of the Atlantic County Jail and as such was on twenty-four hour call. He was assigned a County-owned vehicle that he was permitted to drive to and from his home. At the time of the accident, plaintiff had been returning home from work and, on his way home, stopped at a winery and became intoxicated. As he completed his journey home, he rammed into a vehicle driven by Kristin Siville, killing her. He was later indicted and apparently convicted of reckless manslaughter.

## I

In addition to the County-owned vehicle, plaintiff and his wife owned two private vehicles, insured by Maryland Casualty, which they used as their ordinary pleasure vehicles. The Maryland Casualty policy contained an exclusion stating:

> We do not provide Liability Coverage for the ownership, maintenance or use of: ... (2) Any vehicle, other than "your covered auto," which is: ... (b) furnished or available *for your regular use.*
>
> [Emphasis added.]

The trial judge determined that the language of the policy defined "you" and "your" as encompassing both plaintiff and his wife. Therefore, reasoned the judge, the exclusion applied only if the vehicle had been supplied for the use of both plaintiff and his wife. According to the judge, since the wife did not have regular use of the County-owned vehicle, that vehicle was not excluded under the terms of plaintiff's own insurance policy.

While we disagree with the motion judge's reasoning on this point, we reverse for another reason. As noted by the judge, employer-furnished vehicles that are provided to an employee on the job and for transportation to and from home have been treated

in varying ways by the courts. New Jersey precedent on this issue is somewhat unresolved.

We set forth, in a non-employment context, the purpose of the "regular use" policy coverage exclusion:

An exclusionary clause ... manifests an intention on the part of the insurer to protect itself from a situation whereby an insured could purchase a policy covering one automobile and be covered without qualification as to all automobiles available for his use. Thus, this type of policy extends coverage to the *casual or occasional* driving of automobiles other than those specifically covered without payment of an extra premium, while excluding the use of automobiles which are furnished for the *regular use of the insured. The clause in question represents an attempt on the part of the insurer to strike a balance between the desire of the insured to be covered, even though not always using the owned automobile, and its right to receive payment of premiums based upon the risk presented by the number of automobiles operated.

[*American Casualty Co. v. Lattanzio*, 78 *N.J.Super.* 404, 410–11, 188 *A.2d* 637 (1963) (citations omitted) (emphasis added).]

The interpretation of the "regular use" exclusion in the company-owned vehicle context then came before the Supreme Court in *Butler v. Bonner & Barnewall, Inc.*, 56 *N.J.* 567, 267 *A.2d* 527 (1970). There, the insured's wife became involved in an accident while, for personal purposes, she was driving a vehicle owned by the insured's employer. *Id.* at 570, 267 *A.2d* 527. The Court found the facts insufficiently developed to determine whether the employer's vehicle was furnished for the insured's regular use, *id.* at 576, 267 *A.2d* 527, noting:

At the outset the issue arises whether "regular use" for insurance coverage purposes should be held to encompass anything less than unrestricted day-to-day use of an employee when the employee is allowed to keep the car at his home. Even if "regular use" should be defined abstractly as not requiring completely unrestricted use, there would still be the matter of the intended extent of the "regular use" in this case.

[*Id.* at 576, 267 *A.2d* 527.]

The Court then explained the factual inconsistencies in the evidence concerning whether the employer knew of or permitted the insured to use the vehicle for personal as well as business purposes. *Id.* at 576–77, 267 *A.2d* 527. The Court's comments concerning the "unrestricted day-to-day use" or the "intended extent of the 'regular use'" seem to imply, as in the out-of-state

cases cited earlier, that "regular use" is determined by reference to the purpose for which the vehicle was furnished and to whether the use for that purpose is unrestricted.

In *Venters v. Selected Risks Insurance Co.*, 120 *N.J.Super.* 549, 295 *A.*2d 373 (App.Div.1972), we similarly concluded that an insured operating a bus within the scope of his employment was precluded from recovering under his personal automobile liability policy because the accident occurred in a vehicle that was furnished for his regular use. *Id.* at 552, 295 *A.*2d 373. This court rejected the insured's argument that the vehicle was not furnished for his regular use because he was permitted to operate the bus only during working hours. *Id.* at 551–52, 295 *A.*2d 373. This again reinforces the interpretation of "regular use" as relating to the unrestricted use of a non-owned vehicle for the primary purpose for which it was furnished.

In *Di Orio v. New Jersey Manuf. Ins. Co.*, 63 *N.J.* 597, 311 *A.*2d 378 (1973) [*Di Orio I* ], the Court addressed a situation where the insured's son had been involved in an accident while driving the insured's partnership's vehicle for personal purposes. The Court discussed the definitions of "regular use" adopted by other courts, including "uninterrupted normal use for all purposes ... without limitation as to use[,]" "principal use as distinguished from a casual or incidental use[,]" "use of the particular automobile ... at such times as [desired,]" "use at will[.]" The Court concluded that the vehicle was not furnished for the regular use of the son, reasoning that there was an absence of any general right to use the vehicle whenever the son pleased. *Id.* at 602–05, 311 *A.*2d 378. Regarding the insured, however, the Court decided:

> We know the car was used in the partnership business and that in driving to and from work the father was pursuing that business. But we do not know the extent, if any, of his use of the car for personal ends and hence we cannot weigh whether he had a general right of use within the definitions we quoted above.

> [*Di Orio I, 63 N.J.* at 608, 311 *A.*2d 378.]

The Court then remanded the case for further factual determinations concerning the extent of the insured's personal use of the vehicle. *Ibid.* The Court's statements could have been interpreted to mean that "regular use" requires (1) a general right to use for both business and personal purposes, or (2) a general right to use the vehicle for the purpose for which it was used at the time of the accident.

In *Di Orio v. New Jersey Manuf. Ins. Co.*, 79 *N.J.* 257, 398 *A.*2d 1274 (1979) [*Di Orio II*], the Supreme Court revisited these issues and found the policy language at issue to be unambiguous. *Id.* at 268, 398 *A.*2d 1274 (citing *Rider v. Lynch*, 42 *N.J.* 465, 201 *A.*2d 561 (1964) and *Cox v. Santoro*, 98 *N.J.Super.* 360, 364–65, 237 *A.*2d 491 (App.Div.1967), and distinguishing *Butler v. Bonner & Barnewall, Inc., supra*, 56 *N.J.* at 577, 267 *A.*2d 527). The Court also announced that it was the furnishing of the vehicle for the named insured's regular use, not the driver's regular use, which was the pertinent inquiry. *Id.* at 267–70, 398 *A.*2d 1274. In determining that the vehicle was furnished for the insured's regular use, the Court specifically stated that regardless of the evidence of the business use, the vehicle was furnished for the regular use of the insured for both business and non-business purposes. The Court noted that therefore it need not resolve the issue of "whether a use beyond the 'regular use' for which a car is furnished remains within the policy coverage." *Id.* at 266–67, 398 *A.*2d 1274 (quoting *Di Orio I*, 63 *N.J.* at 608, 311 *A.*2d 378). The Court then stated that "[t]he [trial court's] decision rested on the weight of the evidence presented with respect to [the insured's] non-business use; and while his *actual* use in that respect may not have been frequent, his *right* to use the [vehicle] for any purpose ... was entirely unrestricted...." *Id.* at 266–67, 398 *A.*2d 1274. It should again be noted that the accident in *Di Orio I & II* involved use of the business-owned vehicle for a personal purpose.

More recently in *Malouf v. Aetna Casualty & Surety Co.*, 275 *N.J.Super.* 23, 28–29, 645 *A.*2d 155 (App.Div.), *certif. denied,* 138 *N.J.* 271, 649 *A.*2d 1291 (1994), this court addressed a situation

very similar to that presented in *Di Orio II*. In *Malouf,* the insured, the sole stockholder of a corporation, became involved in an accident with a company-owned vehicle while using it for personal purposes. 275 *N.J.Super.* at 25, 645 *A.*2d 155. Unlike the situation in *Di Orio II,* the insured did not actually make a significant amount of personal use of the company automobile, but the *Malouf* court recognized that *Di Orio II* focused not on the actual use, but on the unrestricted control over the use. 275 *N.J.Super.* at 27–28, 645 *A.*2d 155. As the insured in *Malouf* enjoyed the same unrestricted right as the insured in *Di Orio II* to use the company-owned automobile for any purpose, the court did not have to "make a determination as to the scope of a third party's permission for an insured to use a non-covered vehicle." *Id.* at 29, 645 *A.*2d 155.

In short, the insureds in *Di Orio II* and *Malouf* were each operating the vehicle at the time of the accident within the scope (or "regular use") for which the vehicle was furnished because each insured was the one giving permission for and determining the scope of the prescribed use. The court in each case, therefore, was not required to determine whether a use outside that for which the vehicle was furnished was within the policy exclusion for non-owned vehicles furnished or available for the insured's regular use. Also, given the insureds' unrestricted control over the use of the business-owned vehicles, the courts found it "unnecessary to decide whether the term 'regular use' should be construed to refer to all of the [insured's] uses of the vehicle (including his business uses), or only to his personal uses[.]" *Malouf,* 275 *N.J.Super.* at 28, 645 *A.*2d 155 (citing *Di Orio II* ).

*Malouf* and *Di Orio II* undercut plaintiff's claim that we must here decide whether "regular use" requires an unrestricted right to use the vehicle for both business and personal purposes. The courts in *Malouf* and *Di Orio,* as well as the majority of out-of-state authority (although stated to be decided upon their particular facts), focused on the use to which the vehicle was being put at the time of the accident, whether business or personal, and looked

to see if the insured had an unrestricted right to use the vehicle for that purpose. *See, e.g., American Southern Ins. Co. v. Golden,* 188 *Ga.App.* 585, 373 *S.E.*2d 652, 654 (1988); *Lemoine v. Herrmann,* 559 *So.*2d 898, 901 (La.App.), *writ denied,* 563 *So.*2d 1159 (La.1990); *State Farm Mut. Auto. Ins. Co. v. Jones,* 238 *Va.* 467, 383 *S.E.*2d 734, 736 (1989).[1] Where the insured, as in the present case, has an unrestricted right to use the vehicle for business purposes and was using the vehicle for such purposes at the time

[1] Most of the earlier cases across the country concerning the issue are also in accord with this analysis. *See, e.g., Nevels v. Hendrix,* 367 *So.*2d 33, 36–37 (La.App.1978); *Kern v. Liberty Mut. Ins. Co.,* 398 *F.*2d 958, 963 (8th Cir.1968); *Seaboard Fire & Marine Ins. Co. v. Gibbs,* 392 *F.*2d 793, 796 (4th Cir.1968); *Farmers Ins. Co. v. Zumstein,* 138 *Ariz.* 469, 675 *P.*2d 729, 732–34 (App.1983); *Batesville Ins. & Fin. Co. v. Butler,* 248 *Ark.* 776, 453 *S.W.*2d 709, 711 (1970); *Hayes v. Fireman's Fund Ins. Co.,* 170 *Colo.* 164, 460 *P.*2d 225, 227 (1969); *Iowa Mut. Ins. Co. v. Addy,* 132 *Colo.* 202, 286 *P.*2d 622, 624 (1955); *Home Ins. Co. v. Kennedy,* 152 *A.*2d 115, 118–19 (Del.Super.Ct.1959); *Bringle v. Economy Fire & Casualty Co.,* 169 *N.W.*2d 879, 882–84 (Iowa 1969); *Brouillette v. Fireman's Fund Ins. Co.,* 163 *So.*2d 389, 392–93 (La.App.), *writ refused,* 246 *La.* 594, 165 *So.*2d 485 (1964); *Winterwerp v. Allstate Ins. Co.,* 277 *Md.* 714, 357 *A.*2d 350, 354–55 (1976) (firefighting truck); *Milwaukee Ins. Co. v. Morrill,* 100 *N.H.* 239, 123 *A.*2d 163, 165 (1956); *Davy v. Merchants Mut. Casualty Co.,* 97 *N.H.* 236, 85 *A.*2d 388, 389–90 (1952); *Kenney v. Employer's Liab. Assur. Corp.,* 5 *Ohio St.*2d 131, 214 *N.E.*2d 219, 221 (1966); *Aetna Casualty & Sur. Co. v. Sessions,* 260 *S.C.* 150, 194 *S.E.*2d 877, 880 (1973); *Jones v. Perkins,* 75 *Wis.*2d 18, 248 *N.W.*2d 468, 472 (1977). Other cases, however, have emphasized the frequency of the use in determining whether a vehicle has been furnished for the insured's "regular use." *See, e.g., Home Ins. Co. v. Kennedy,* 152 *A.*2d 115, 118–19 (Del.Super.1959); *Franey v. State Farm Mut. Auto. Ins. Co.,* 5 *Ill.App.*3d 1040, 285 *N.E.*2d 151, 152–53 (1972); *Embody v. Le Blanc,* 131 *So.*2d 225, 230 (La.App. 1961); *Le Doux v. Iowa Nat. Mut. Ins. Co.,* 262 *N.W.*2d 418, 422 (Minn.1978); *Motorists Mut. Ins. Co. v. Bittler,* 14 *Ohio Misc.* 23, 235 *N.E.*2d 745, 749 (Com.Pl.1968); *Aetna Casualty & Sur. Co. v. Sessions,* 260 *S.C.* 150, 194 *S.E.*2d 877, 879–80 (1973); *Grange Ins. Ass'n v. MacKenzie,* 103 *Wash.*2d 708, 694 *P.*2d 1087, 1089 (1985). Still other cases, including some of those cited above, focused on a combination of factors. *See, e.g., Farm Bureau Mut. Auto. Ins. Co. v. Marr,* 128 *F.Supp.* 67 (D.N.J.1955) (using such factors as frequency of availability of use, frequency of actual use, use for purpose for which it was furnished, and use in area where it was expected). Given that plaintiff in the present case drove the vehicle for several months to and from work daily and maintained it at his home overnight, it is clear that either of these other lines of cases would support a conclusion that the County-owned vehicle was furnished for plaintiff's regular use.

of the accident, the vehicle is one that is furnished for his regular use.[2]

We recognize that one could argue that if the company fails to provide sufficient coverage and is itself judgment-proof, the insured's own assets would be at risk in the absence of personal coverage. But there appears to be insurance available to insureds who wish to obtain "extended non-owned automobile coverage." *See Di Orio II*, 79 *N.J.* at 264, 398 *A.*2d 1274. By paying an additional premium, an insured could obtain such coverage for automobiles not owned by the named insured or members of his or her household. *Ibid.* An insured in a situation such as plaintiff's, therefore, could have insured himself for excess coverage if he so chose. The availability of such coverage therefore buttresses our position that the "regular use" exception should apply, at least when an accident occurs while a vehicle furnished for unrestricted business use is being used for business purposes.

■ The facts of the present case reveal that the insured was operating the vehicle while on his way home from work. As plaintiff had an unrestricted right to use the County-owned vehicle for business purposes, which the County defined as including driving to and from work, and plaintiff was using the vehicle for these purposes at the time of the accident, the "regular use"

---

[2] If, however, the insured had an unrestricted right to use the vehicle for business purposes and was using it for personal purposes at the time of the accident, then the question unresolved by *Di Orio II* and *Malouf* would arise, namely, "whether a use beyond the 'regular use' for which a car is furnished remains within the [personal automobile insurance] policy coverage." 79 *N.J.* at 266, 398 *A.*2d 1274; *cf. Farm Bureau Mut. Auto. Ins. Co. v. Marr, supra,* 128 *F.Supp.* at 69 (applying its view of New Jersey law) ("Whether an automobile is furnished by another to an insured for his regular use may reasonably depend upon the time, place, and purpose for which it is to be used. One furnished for all purposes at all times and places would clearly be for his regular use. One furnished at all times but strictly for business purposes alone could hardly be said to have been furnished for his regular use at a time and place when it was being used for personal purposes.") (quotations & citation omitted). This question was unanswered in *Di Orio II* and *Malouf,* and also need not be addressed here.

exclusion applies. The summary judgment against Maryland Casualty Insurance Company should therefore be reversed.

## II

We now turn to plaintiff's cross-appeal of the part of the summary judgment entered in favor of Atlantic County. Plaintiff contends that Atlantic County, as self-insurer of a vehicle operated by plaintiff as a permissive user, is obligated to provide plaintiff with coverage and a defense. He also claims that the motion judge mistakenly applied the Tort Claims Act to protect Atlantic County from plaintiff's claim that he is an additional insured.

The County's potential liability is predicated on *N.J.S.A.* 40A:10–3 and –4. *N.J.S.A.* 40A:10–3 requires that any municipality which has not established an insurance fund must "provide insurance coverage ... for the operators of all motor vehicles ... owned by or under its control ... against liability for damages to property ... and against liability for injuries or death...." *N.J.S.A.* 40A:10–4 provides that a municipality that has failed to provide the insurance mandated by *N.J.S.A.* 40A:10–3 "shall be liable for payment of any judgment recovered in a court of competent jurisdiction against any operator of a motor vehicle ... [in the requisite amounts provided by *N.J.S.A.* 40A:10–3] for damages resulting in personal injury or death or damage to property caused by the *authorized operation or use* of such motor vehicles...." (Emphasis added). *N.J.S.A.* 40A:10–3 contains the per accident limits of the required policy: $5000 for property damage, $50,000 for the death or injury to one person, and $100,000 for the injuries or death of more than one person. *See Downey v. City of Elizabeth,* 273 *N.J.Super.* 335, 337, 641 *A.*2d 1109 (App.Div.1994).

Through the enactment of these statutes, the Legislature has required that municipalities either obtain the stipulated insurance or be considered self-insurers in the prescribed amounts. As Atlantic County has failed to procure insurance, it must be deemed a self-insurer, and is required to provide the coverage

defined by *N.J.S.A.* 40A:10–4. In fact, even if the County had obtained an insurance policy at odds with the statutory standards, the court would, by operation of law, amend the policy to conform to the statutory requirements. *See Allstate Ins. Co. v. Malec,* 104 *N.J.* 1, 6, 514 *A.*2d 832 (1986).

At the time of the accident, plaintiff was operating a motor vehicle for which the County was liable to provide the statutory coverage, provided that plaintiff satisfied the "authorized operation or use" standard of *N.J.S.A.* 40A:10–4. The County authorized plaintiff to drive the County-owned vehicle to and from work and, although he made a stop at a winery on his way home from work and became intoxicated, plaintiff was continuing on his way home when the accident occurred. This operation for commuting purposes was part of the express purposes for which plaintiff received the car. It ensured that he would have the County vehicle available if he were called in the event of an emergency.

Even if the commuting use were not within the express permission given by the County, application of the "initial permission" rule would also render plaintiff's use of the vehicle an authorized use within the meaning of *N.J.S.A.* 40A:10–4. The omnibus clause that was included in most automobile liability insurance policies, but was not required for public entities as self-insurers, was analogous to the "authorized operation or use" standard.[3] The former standard omnibus clause provided coverage for " 'any person or organization legally responsible for the use of the described automobile provided the actual use was with the permission of the policyholder[,]' " *Matits v. Nationwide Mut.*

---

[3] *See N.J.S.A.* 39:6–54 (exempting public entities as self-insurers from the requirements of the now-repealed provisions of the Motor Vehicle Security–Responsibility Law which mandated inclusion of an omnibus clause); *N.J.S.A.* 39:6A–4 and –2 (requiring a similar form omnibus clause and exempting public entities as self-insurers via the statute's definition of "automobile"). *But see Schechter v. Selective Ins. Co. of Am.,* 264 *N.J.Super.* 299, 303, 624 *A.*2d 625 (App.Div.1993) (noting the Legislature's intent to treat self-insurers and insurance companies alike).

*Ins. Co.*, 33 *N.J.* 488, 490, 166 *A.*2d 345 (1960), and the corresponding present clause likewise focuses on the use of the automobile with the named insured's permission. *N.J.S.A.* 39:6A–4. To determine whether the use of a vehicle falls within the scope of the owner's permission within the meaning of the omnibus clause, New Jersey employs the "initial permission" rule adopted by our Supreme Court in *Matits v. Nationwide Mut. Ins. Co.*, 33 *N.J.* at 496–97, 166 *A.*2d 345. Under this rule, "if a person is given permission to use a motor vehicle in the first instance, any subsequent use short of theft or the like while it remains in his possession, though not within the contemplation of the parties, is a permissive use within the terms of a standard omnibus clause in an automobile liability insurance policy." *Verriest v. INA Underwriters Ins. Co.*, 142 *N.J.* 401, 411, 662 *A.*2d 967 (1995) (quoting *Matits v. Nationwide Mut. Ins. Co.*, 33 *N.J.* at 496–97, 166 *A.*2d 345). This liberal rule "contemplates a situation in which the subsequent use of a car may be inconsistent with and even frustrate the intention and plans of the person granting permission," *Small v. Schuncke*, 42 *N.J.* 407, 414–15, 201 *A.*2d 56 (1964), since the rule is aimed at assuring compensation for wrongfully injured parties. *Odolecki v. Hartford Acc. & Indem. Co.*, 55 *N.J.* 542, 549, 264 *A.*2d 38 (1970).

■ Even a detour for personal use would not take the operation out of the initial permission rule. *See, e.g., Matits v. Nationwide Mut. Ins. Co., supra*, 33 *N.J.* at 490–92, 496–97, 166 *A.*2d 345 (holding that initial permission was not invalidated where person visited several taverns with neighbor's car even though permission was given to use the vehicle to visit sick mother); *State Farm Mut. Auto. Ins. Co. v. Travelers Ins. Co.*, 57 *N.J.* 174, 178–80, 270 *A.*2d 625 (1970) (holding customer's insurance covered automobile dealer employee's use of customer car even though employee used car for personal purposes after repairing and road testing the vehicle). Consequently, since the accident occurred while plaintiff was making an authorized use of the County-owned vehicle, or at least within the initial permission given by the County, the statute

requires both coverage up to the limits set forth in *N.J.S.A.* 40A:10-3 and a defense.

▪ The County also contends that plaintiff's use of the vehicle at the time of the accident was unauthorized within the meaning of *N.J.S.A.* 40A:10-4 since plaintiff was operating the vehicle while intoxicated and was driving the vehicle in such a manner as to commit the crime of reckless manslaughter. The motion judge engrafted the analysis of *Palmentieri v. City of Atlantic City,* 231 *N.J.Super.* 422, 431, 555 *A.*2d 752 (Law Div.1988) upon the provision of *N.J.S.A.* 40A:10-3 and -4, and concluded that, under *N.J.S.A.* 59:10-4, 59:2-2 and -10, there can be no indemnification for a criminal act. 231 *N.J.Super.* at 431, 555 *A.*2d 752. *N.J.S.A.* 59:2-10 clearly states that "a public entity is not liable for the acts or omissions of a public employee constituting a crime, actual fraud, actual malice, or willful misconduct." *N.J.S.A.* 59:10-4 permits discretionary indemnification by a public governing body of an employee's acts resulting in damages if the acts "did not constitute actual fraud, actual malice, willful misconduct or an intentional tort." *N.J.S.A.* 59:2-2 defines the public entity's general *respondeat superior* obligations for an employee's torts.

We, however, reject the application of these statutes to this case because plaintiff is not asking the County to indemnify him for a criminal act or willful misconduct or to bear responsibility as a tortfeasor on a direct or *respondeat superior* basis. Instead, plaintiff is asking the County, as a self-insurer, to provide insurance coverage required by statute for the benefit of an injured party. We therefore hold the County responsible as a self-insurer to provide coverage and defense for the claims arising out of plaintiff's operation of the County's vehicle.

The summary judgment entered against defendant Maryland Casualty Insurance Company is reversed. The summary judgment entered in favor of defendant Atlantic County Board of Chosen Freeholders is also reversed. This matter is remanded to the Law Division for further proceedings in accordance with this opinion.