JUSTICE ALBIN
dissenting.
The majority finds that the language of the insurance policy at issue unambiguously limits the insured’s damages to $1,000,000 in flood coverage. The Appellate Division found that the policy’s language unambiguously provides, in addition to the flood-insurance coverage, $500,000 for debris removal costs. Both cannot be right, and neither is wholly wrong. Both sides have reasonable arguments because the insurance contract is hopelessly ambiguous and needlessly complex. Deciphering an insurance contract should not be comparable to breaking the Enigma code.
Because reasonable minds can differ about the meaning and interplay of the flood insurance and debris removal clauses in the insurance policy and because Travelers drafted the ambiguous policy terms, I believe that the insured’s interpretation should *213 prevail under the doctrines of contra proferentem and reasonable expectations. I therefore respectfully dissent.
I.
Oxford purchased an insurance policy that provides coverage for damages caused by flood. Oxford also purchased additional coverage for debris removal. The question is whether this insurance policy provides reimbursement for the cost of debris removal above the limit for damages caused by flood. I disagree with the majority that there is only one ineluctable answer. One reasonable interpretation that can be teased from the ninety-one-page insurance policy is that Oxford is entitled to reimbursement for debris removal after exceeding the limit for damages caused by flood.
Here is the policy language that leads to that conclusion.
A.
The section entitled “Supplemental Coverage Declarations” sets the “Limits of Insurance” for certain losses. Paragraph 14 states that the aggregate limit “for all losses covered under this policy” for “Flood” is $1,000,000. Paragraph 7, however, states that the limit for “Debris Removal (additional), in any one occurrence,” is $500,000. According to the policy terms, reimbursement for debris removal is “additional,” which in common parlance means “added, extra, or supplementary to what is already present or available.” The New Oxford American Dictionary 18 (2d ed. 2005). That language suggests that flood loss is covered up to a limit of $1,000,000 but that reimbursement for debris removal in the amount of $500,000 is “additional” to any loss exceeding the flood limit.
This interpretation is strengthened by the instruction that “[f]or application of Limits of Insurance refer to Section O,” which is located in the General Conditions section of the policy. The preamble to the General Conditions section states that “[a]ll coverages included in this policy are subject to the following *214 conditions,” one of which is Section 0. Section 0.2.a.(1) provides that “if a Limit of Insurance for Debris Removal (additional) is specified in the Supplemental Coverage Declarations, [it] will apply in addition to the applicable Covered Property Limit of Insurance.” (Emphasis added).
Oxford’s interpretation is further bolstered by Section B.2.a.(l) and (2) of the Property Coverage Form that addresses debris removal. Section B.2.a.(l) generally provides that Travelers “will pay the necessary and reasonable expense incurred by the Insured to remove debris of Covered Property ... caused by or resulting from a Covered Cause of Loss that occurs during the policy period.” Section B.2.a.(2) specifically provides that if:
(a)(i) The sum of direct physical loss or damage and debris removal expense exceeds the Limit of Insurance; or
(ii) The debris removal expense exceeds the above 25% limitation; and
(b) A Limit of Insurance is specified in the Supplemental Coverage Declarations for Debris Removal (additional); [then]
[Travelers] will also pay an additional amount, up to the Limit of Insurance specified in the Supplemental Coverage Declarations for Debris Removal (additional).
[ (Emphasis added).]
Oxford’s claim appears to meet the preconditions for additional debris removal coverage. Oxford’s total claimed loss of $1,207,961.28 exceeds the $1,000,000 flood-insurance limit, and the Supplemental Coverage Declarations explicitly provides for up to $600,000 of additional debris removal as a separate limit. Therefore, a reasonable interpretation of the insurance policy allows for $500,000 of debris removal as an additional coverage above the $1,000,000 limit of insurance applying to a flood loss.
B.
The majority takes the position that the Flood Endorsement stands apart from the remainder of the contract and controls the extent of flood coverage available to Oxford. Ante at 209-10, 160 A.3d at 1271. That approach leads the majority to conclude that the Flood Endorsement separately controls the limit of coverage *215 for any damage stemming from a flood. Id. at 208-10, 160 A.3d at 1271.
But the Flood Endorsement is not an island unto itself; it is inextricably interwoven into an insurance policy that must be read as a whole. See Manahawkin Convalescent v. O’Neill, 217 N.J. 99, 118, 85 A.3d 947 (2014) (“Contracts should be read ‘as a whole in a fair and common sense manner.’ ” (quoting Hardy ex rel. Dowdell v. Abdul-Matin, 198 N.J. 95, 103, 965 A.2d 1165 (2009))). The Flood Endorsement must be viewed in conjunction with the Property Coverage Form, the Supplemental Coverage Declarations, and the General Conditions of the policy. Doing so would lead a reasonable insured to believe that debris removal coverage is additional to flood coverage.
At the very least, “the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage.” Weedo v. Stone-E-Brick, Inc., 81 N.J. 233, 247, 405 A.2d 788 (1979). In construing an insurance contract, if the “language of a policy will support two meanings, one favorable to the insurer and the other to the insured, the interpretation favoring coverage should be applied.” Cypress Point Condo. Ass’n v. Adria Towers, L.L.C., 226 N.J. 403, 416, 143 A.3d 273 (2016) (quoting Butler v. Bonner & Barnewall, Inc., 56 N.J. 567, 575, 267 A.2d 527 (1970)).
Given the uncertain scope of coverage, Oxford should receive the benefit of having the contractual ambiguity construed against the insurer under the doctrines of contra proferentem and reasonable expectations.
II.
An insurance policy is not an ordinary contract, but rather a “contract! ] of adhesion between parties who are not equally situated.” Nav-Its, Inc. v. Selective Ins. Co. of Am., 183 N.J. 110, 118, 869 A.2d 929 (2005) (alteration in original) (quoting Doto v. Russo, 140 N.J. 544, 555, 659 A.2d 1371 (1995)). Under the doctrine of contra proferentem, “a court generally will adopt the *216 meaning that is most favorable to the non-drafting party,” or, stated differently, an interpretation against the draftsman. Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am., 195 N.J. 231, 238, 948 A.2d 1285 (2008). The doctrine of contra proferentem applies to a commercial entity that did not “participate[ ] in the drafting of the insurance contract.” See Benjamin Moore & Co. v. Aetna Cas. & Sur. Co., 179 N.J. 87, 102, 843 A.2d 1094 (2004). “[O]nly where it is clear that an insurance policy was ‘actually negotiated or jointly drafted,’ and where the policyholder had bargaining power and sophistication, is the rule of strict construction of policy terms against the insurer not invoked.” Owens-Illinois, Inc. v. United Ins. Co., 264 N.J.Super. 460, 488, 625 A.2d 1 (App. Div. 1993) (quoting AIU Ins. Co. v. FMC Corp., 51 Cal.3d 807, 274 Cal.Rptr. 820, 799 P.2d 1253, 1265 (1990)), rev’d in part and remandad on other grounds, 138 N.J. 437, 650 A.2d 974 (1994).
Although Oxford is a commercial entity, there is no evidence to suggest that it negotiated the terms of this insurance contract with Travelers. The insurance policy is an amalgamation of standardized forms and boilerplate language spread over nearly one-hundred pages of dense and confusing verbiage. Under our jurisprudence, any ambiguity about the scope of coverage should be resolved in favor of Oxford.
III.
The doctrine of reasonable expectations is another interpretive canon for construing ambiguous insurance contracts. In a case involving a sophisticated insured, a governmental entity, this Court stated that ambiguous terms should be resolved “against the insurer and in favor of the insured to give effect to the insured’s reasonable expectations.” Passaic Valley Sewerage Comm’rs v. St. Paul Fire & Marine Ins. Co., 206 N.J. 596, 601, 608, 21 A.3d 1151 (2011); see also Stone-E-Brick, supra, 81 N.J. at 247, 405 A.2d 788 (stating that reasonable expectations of insured commercial entity prevail if legitimate ambiguity arises from phrasing of insurance policy).
*217 The majority’s strained and hyper-technical analysis is at variance with the interpretive canons that favor the insured when a policy is so riddled with ambiguity that no clear understanding can be reached about the scope of an insurance contract. One sensible interpretation of the policy is that the “additional” debris removal coverage was intended to supplement the reimbursement available for flood. That interpretation justifies Oxford’s reasonable expectations.
IV.
Because the majority finds certitude where ambiguity abounds and because Oxford is denied the benefit of its reasonable interpretation of an insurance policy that entitles it to debris removal coverage, I respectfully dissent.